107 P.3d 141 (2005)
STATE of Washington, Respondent,
v.
Ryan Lee WININGS, Appellant.
No. 30578-0-II.
Court of Appeals of Washington, Division 2.
February 23, 2005.
*144 Jodi R. Backlund, Backlund & Mistry, Olympia, WA, for Appellant.
Cheryl Taylor, Attorney at Law, Olympia, WA, for Respondent.

PART PUBLISHED OPINION
BRIDGEWATER, J.
¶ 1 Ryan Lee Winings appeals his conviction of second degree assault while armed with a deadly weapon. We affirm.
¶ 2 On March 24, 2003, Daniel Warner went to Tracy Neitzel's residence to show him a sword that his employer had given him. Several people were present at the residence when Mr. Warner arrived, including Ryan Winings. Some of the guests were drinking, and Winings was heavily intoxicated. At trial, Neitzel testified that Winings had been on a "3-day drunk." 3 Report of Proceedings (RP) (Jun. 25, 2003) at 60.
¶ 3 Mr. Warner was showing the sword to his friends, when Winings grabbed the sword out of his hands and pulled it out of its sheath. Winings began swinging the sword in the air. Mr. Warner testified that he initially believed that Winings was just "playing around," but things "got a little out of hand" when Winings began poking him in the chest with the sword. 3 RP at 24, 33. Mr. Warner said, "`ow' that hurts," and then Winings stabbed Mr. Warner in the foot with the sword. 3 RP at 25. The sword cut a hole into Mr. Warner's leather shoe. Mr. Warner was not seriously injured, but he received a small cut on his toe. He testified that during the incident, he believed that his life was in danger. He felt "uneasy" and ran out of the house. 3 RP at 26. Mr. Warner did not seek medical attention for his foot.
¶ 4 Winings was charged with second degree assault while armed with a deadly weapon. The information states:

*145 In the County of Clallam, State of Washington, on or about the 24th day of March, 2003, the Defendant did assault another with a deadly weapon; in violation of RCW 9A.36.021, a Class B felony.
Clerk's Papers (CP) at 78.
¶ 5 Winings was tried before a jury on June 25, 2003. During the trial, Winings requested that the court give a jury instruction on the lesser degree offense of fourth degree assault. The court denied his request, stating that courts need only instruct the jury as to a lesser degree offense where the evidence supports a finding that only the lesser degree offense was committed. The court found that the sword was a deadly weapon per se because its blade was longer than three inches and, thus, the evidence did not support any finding that only fourth degree assault was committed. Winings objected to the court's ruling.
¶ 6 In addition, the court gave the following instructions:
No. 6
An assault is an intentional touching or striking or cutting of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking or cutting is offensive, if the touching or striking or cutting would offend an ordinary person who is not unduly sensitive.
An assault is also an act done with intent to inflict bodily injury upon another, tending, but failing to accomplish it, and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.
An assault is an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.
CP at 26.

No. 7
Deadly weapon means any weapon, device, instrument, substance or article which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily injury.
CP at 27.
No. 12
For purposes of a special verdict the State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of the commission of the crime.
A deadly weapon for purposes of the special verdict is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death. The following instruments are examples of deadly weapons: blackjack, sling shot, metal knuckles, any dirk, dagger, pistol, revolver or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, and any metal pipe or bar used or intended to be used as a club.
CP at 32.
¶ 7 The jury convicted Winings as charged and returned a special verdict finding that he was armed with a deadly weapon at the time of the assault. At sentencing, the State offered evidence that Winings had five prior California felony convictions from 1992. These offenses include three felony first degree burglary convictions for unlawfully entering a dwelling with intent to commit larceny and any other felony, one conviction for felony possession of a controlled substance  cocaine for sale, and one conviction for felony possession of a controlled substance  cocaine. Winings pleaded guilty to each of these offenses. The State submitted what appear to be certified copies of the minute orders,[1] Winings' guilty pleas, and the charging *146 documents identifying the crimes Wining had been charged with and their elements. Additionally, the State submitted an abstract of judgment, which shows that Winings was convicted of three counts of first degree burglary and possession of a controlled substance and his sentence. These documents were not offered as exhibits, but were presented to the court at the time of sentencing.[2]
¶ 8 Winings objected to the use of his guilty plea to felony possession of a controlled substance for sale in calculating his offender score because he believed it was part of his plea bargain with regard to the simple possession charge. As such, he argued that his offender score should be four. The court denied his objection, and held that the State had sufficiently proved the conviction. Winings raised no other objections to the use of his California convictions. The court determined that Winings had an offender score of five and sentenced him to 34 months, the low end of the standard range.

I. Information
¶ 9 Winings first contends that the information is factually deficient because it failed to identify the victim, the weapon used, or the circumstances that made the "weapon deadly." Br. of Appellant at 15. Winings is in error.
¶ 10 A charging document must contain "[a]ll essential elements of a crime" so as to give the defendant notice of the charges and allow the defendant to prepare a defense. State v. Tresenriter, 101 Wash.App. 486, 491, 4 P.3d 145 (2000) (quoting State v. Kjorsvik, 117 Wash.2d 93, 97, 812 P.2d 86 (1991)). When, as here, the defendant challenges the charging document for the first time on appeal, we liberally construe the document in favor of validity. Tresenriter, 101 Wash.App. at 491, 4 P.3d 145. Under the liberal construction rule, if an apparently missing element may be fairly implied from language within the charging document, we will uphold the charging document on appeal. Tresenriter, 101 Wash.App. at 491, 4 P.3d 145. The test is: "(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?" Tresenriter, 101 Wash.App. at 491, 4 P.3d 145 (quoting Kjorsvik, 117 Wash.2d at 105-06, 812 P.2d 86).
¶ 11 We distinguish between charging documents that are constitutionally deficient  i.e., documents that fail to allege sufficient facts supporting each element of the crime charged  and those that are merely vague. State v. Leach, 113 Wash.2d 679, 686, 782 P.2d 552 (1989). A charging document that states each statutory element of a crime, but is vague as to some other significant matter, may be corrected under a bill of particulars. Leach, 113 Wash.2d at 687, 782 P.2d 552. A defendant may not challenge a charging document for "vagueness" on appeal if he or she failed to request a bill of particulars at trial. Leach, 113 Wash.2d at 687, 782 P.2d 552.
¶ 12 In this case, Winings was charged with second degree assault while armed with a deadly weapon in violation of RCW 9A.36.021, which provides in relevant part:
(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
....
(c) Assaults another with a deadly weapon.

RCW 9A.36.021(1)(c) (emphasis added).
¶ 13 Winings concedes that the information includes each essential legal element of the charge of second degree assault while armed with a deadly weapon. But he argues that Leach imposes two requirements for a valid charging document: a defendant must be notified of both the legal elements of the offense and the essential facts supporting those elements. Because the information does not state the victim, the weapon used, or the manner in which Winings used the *147 weapon, he contends that the information fails to allege all of the essential facts supporting every element of second degree assault and is thereby defective.
¶ 14 Leach requires only that the charging instrument allege "sufficient facts to support every element of the crime charged"  it does not impose any additional requirement that the State allege facts beyond those that sufficiently support the elements of the crime charged or that the State describe the facts with great specificity.[3]Leach, 113 Wash.2d at 688, 782 P.2d 552. Construed liberally, the information sufficiently lists facts supporting each element of second degree assault with a deadly weapon. It alleges that Winings assaulted another with a deadly weapon, that his actions violated RCW 9A.36.021 and constituted a class B felony,[4] and that the incident occurred on or about March 24, 2003, in Clallam County. The information is not constitutionally deficient. And although it may be vague, Winings failed to request a bill of particulars and may not now raise this issue on appeal.

II. Jury Instructions
¶ 15 Winings next challenges the trial court's jury instructions. We review a trial court's refusal to give a proposed jury instruction for an abuse of discretion. State v. Picard, 90 Wash.App. 890, 902, 954 P.2d 336, review denied, 136 Wash.2d 1021, 969 P.2d 1065 (1998). But we review de novo alleged errors of law in jury instructions. Del Rosario v. Del Rosario, 152 Wash.2d 375, 382, 97 P.3d 11 (2004). Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. Del Rosario, 152 Wash.2d at 382, 97 P.3d 11.

A. Lesser Degree Offense

¶ 16 Winings contends that the trial court improperly denied his request for a jury instruction on the lesser degree offense of fourth degree assault.
¶ 17 An instruction on an inferior degree offense is warranted where: (1) the statutes for both the charged offense and the proposed inferior degree offense proscribe but one offense; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense. State v. Fernandez-Medina, 141 Wash.2d 448, 454, 6 P.3d 1150 (2000). Winings challenges only the third prong of this test.
¶ 18 Fourth degree assault requires proof that, under circumstances not amounting to first, second, or third degree assault, or custodial assault, the defendant assaults another. RCW 9A.36.041(1). Thus, we must determine whether "substantial evidence in the record supports a rational inference that [Winings] committed only the ... inferior degree offense [of fourth degree assault] to the exclusion of the greater offense [of second degree assault]." Fernandez-Medina, 141 Wash.2d at 461, 6 P.3d 1150 (emphasis added). Put another way, the record must support an inference that the assault was only committed with a non-deadly weapon.
*148 ¶ 19 A "[d]eadly weapon" is any explosive or loaded or unloaded firearm, and includes any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in RCW 9A.04.110, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm. RCW 9A.04.110(6). This provision creates two categories of deadly weapons. State v. Taylor, 97 Wash.App. 123, 126, 982 P.2d 687 (1999). The first includes explosives or firearms, which are deadly per se. Taylor, 97 Wash.App. at 126, 982 P.2d 687. The second category includes any other weapon that is readily capable of causing death or substantial bodily harm under the circumstances in which it is used. Taylor, 97 Wash.App. at 126, 982 P.2d 687. "Substantial bodily harm" means bodily injury that involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part. RCW 9A.04.110(4)(b).
¶ 20 Winings correctly asserts that the trial court erred in finding that the sword used to commit the crime was a deadly weapon per se under RCW 9.94A.602 because its blade was longer than three inches. It is apparent that in making its ruling, the court incorrectly relied upon the definition of "deadly weapon" from RCW 9.94A.602, the deadly weapon enhancement statute.[5] A sword is neither an explosive nor a firearm and thus is not a deadly weapon per se under RCW 9A.04.110(6).[6] Nevertheless, this court may consider whether the sword was readily capable of causing death or substantial bodily harm under the circumstances in which it was used by Winings.[7] The circumstances of a weapon's use include the intent and present ability of the use, the degree of force, the part of the body to which it was applied, and the physical injuries inflicted. State v. Shilling, 77 Wash.App. 166, 171, 889 P.2d 948, review denied, 127 Wash.2d 1006, 898 P.2d 308 (1995).
¶ 21 Here, the record does not support any rational inference that the assault was committed only with a non-deadly weapon. Winings was extremely intoxicated and had been on a "3-day drunk." 3 RP at 60. He grabbed Mr. Warner's sword from him, flailed it around in the air, and then used it to stab Mr. Warner in the foot. Winings argues that this evidence supports an inference that only fourth degree assault was committed (and that the sword was not a deadly weapon) because his present abilities were unclear, the degree of force used was minimal, and Mr. Warner was only injured slightly and did not seek medical assistance. This argument is without merit. Although Mr. Warner was not seriously injured, the evidence clearly shows that, as used, the sword was a deadly weapon readily capable of causing substantial bodily harm. The degree of force used was great enough to cut a hole through a leather shoe, and had Mr. Warner been wearing no socks and different shoes, perhaps ones in which his toes were exposed, or had the sword landed in a slightly different manner, the sword easily could have seriously injured his toe or even severed it. Winings was not entitled to the lesser degree offense instruction.

B. Alternative Means

¶ 22 In addition, Winings asserts that his conviction must be reversed because *149 the jury was instructed on each alternative means of committing assault, and one of these means  attempted battery  was not supported by sufficient evidence. But he proposed a nearly identical instruction defining assault, which states "[a]n assault is also an act ... done with intent to inflict bodily injury upon another, tending, but failing to accomplish it." CP at 55. Under the doctrine of invited error, even where constitutional rights are involved, we are precluded from reviewing jury instructions when the defendant has proposed an instruction or agreed to its wording. State v. Bradley, 141 Wash.2d 731, 736, 10 P.3d 358 (2000); In re Detention of Gaff, 90 Wash.App. 834, 845, 954 P.2d 943 (1998). Moreover, even if this court considers his claims, they fail.
¶ 23 Three definitions of assault are recognized in Washington: (1) an attempt, with unlawful force, to inflict bodily injury upon another (attempted battery); (2) an unlawful touching with criminal intent (battery); and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is capable of inflicting that harm (common law assault). State v. Nicholson, 119 Wash.App. 855, 860, 84 P.3d 877 (2003). Because definitional instructions do not create alternative means of committing the crime, necessitating jury unanimity, Winings' argument fails. State v. Linehan, 147 Wash.2d 638, 648-49, 56 P.3d 542 (2002), cert. denied, 538 U.S. 945, 123 S.Ct. 1633, 155 L.Ed.2d 486 (2003); State v. Marko, 107 Wash.App. 215, 219-220, 27 P.3d 228 (2001).[8]

C. Comment on the Evidence

¶ 24 Winings also contends that the trial court improperly commented on the evidence. Specifically, he argues that by instructing the jury regarding the definition of "deadly weapon" pursuant to RCW 9A.04.110(6) in instruction 7 and the definition of "deadly weapon" under the deadly weapon enhancement statute in instruction 12, the trial court effectively "comment[ed] on the evidence by suggesting that the sword here was a per se deadly weapon, regardless of its use." Br. of Appellant at 26. He further argues that the court should have bifurcated the trial or at least explained to the jury that the enhancement definition should not influence its decision as to Winings' guilt. This argument is meritless.
¶ 25 The Washington Constitution forbids a judge from conveying to a jury the court's opinion about the merits or facts of a case. Wash. Const. art. 4, § 16. But an instruction that states the law correctly and is pertinent to the issues raised in the case does not constitute a comment on the evidence. State v. Johnson, 29 Wash.App. 807, 811, 631 P.2d 413, review denied, 96 Wash.2d 1009 (1981).
¶ 26 Here, the court properly instructed the jury as to the meaning of "deadly weapon" for purposes of determining whether Winings committed second degree assault. CP at 27. The instruction clearly provides, "[d]eadly weapon means any weapon ... which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily injury." CP at 27 (emphasis added). And this instruction followed the court's instructions regarding the elements of second degree assault and the three recognized definitions of assault. The court also properly instructed the jury regarding the meaning of "deadly weapon" for purposes of determining whether Winings was armed with a deadly weapon at the time of the crime. The instruction explicitly states, "[f]or purposes of a special verdict [,] the State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of commission of the crime. A deadly weapon ... is... any knife having a blade longer than three inches." CP at 32 (emphasis added). Nothing in the language of these instructions suggests *150 that the jury should find that the sword was a deadly weapon per se for purposes of determining guilt. Rather, these instructions correctly state the law and informed the jury that it should find that the sword was a deadly weapon per se only for "purposes of [its] special verdict." CP at 32.

III. Calculation of Offender Score
¶ 27 Winings asserts that the trial court improperly calculated his offender score. He argues the following: (1) the State failed to establish his out-of-state convictions; (2) the State failed to provide any evidence regarding the classification of his convictions; and (3) the court improperly included these convictions in his offender score because they had "washed out." Br. of Appellant at 37. We address each issue in turn.
¶ 28 Illegal or erroneous computations of an offender score may be raised for the first time on appeal. State v. Ford, 137 Wash.2d 472, 477, 973 P.2d 452 (1999). We review an offender score de novo unless it involves factual or discretionary determinations. State v. Wilson, 113 Wash.App. 122, 136, 52 P.3d 545 (2002), review denied, 149 Wash.2d 1006, 67 P.3d 1097 (2003); In Re Goodwin, 146 Wash.2d 861, 874, 50 P.3d 618 (2002).
¶ 29 First, Winings contends that the State failed to prove his California convictions. The use of a prior conviction as a basis for sentencing under the SRA is constitutionally permissible if the State proves the existence of the prior conviction by a preponderance of the evidence. Ford, 137 Wash.2d at 479-80, 973 P.2d 452. Winings argues that the documents purporting to establish his criminal history were neither offered nor admitted into evidence and thus, cannot be included in his offender score. Additionally, he argues that the sentencing court should not have considered these documents because they were not certified.
¶ 30 Here, the record amply demonstrates that the State submitted, and the trial court considered, copies of the minute orders, Winings' guilty pleas, and the charging documents identifying the crimes Wining was charged with and their elements. Additionally, the State submitted an abstract of judgment, which shows that Winings was convicted of three counts of first degree burglary and possession of a controlled substance and his sentence. While these documents appear to be certified,[9] this determination is immaterial.
¶ 31 Our Supreme Court has stated that the submission of uncertified copies of court records is a "loose practice" that it does not condone. In re Pers. Restraint of Connick, 144 Wash.2d 442, 455, 28 P.3d 729 (2001). But in Ford, the court held that, while the best evidence of a prior conviction is a certified copy of the judgment, the State "may introduce other comparable documents of record or transcripts of prior proceedings to establish criminal history." Ford, 137 Wash.2d at 480, 973 P.2d 452 (emphasis added). The court further held that "the nature of the State's burden under the SRA ... is not overly difficult to meet. The State must introduce evidence of some kind to support the alleged criminal history." Ford, 137 Wash.2d at 480, 973 P.2d 452 (emphasis added).
¶ 32 Exhibit 1 is Winings' statement on plea of guilty, which he signed in cause no. 93392 on June 3, 1992. He pleaded guilty to three counts of first degree (residential) burglary and possession of a controlled substance.[10] *151 The minute order states that these crimes were felonies and that Winings was sentenced to two years in jail and fined $100 by Judge Arthur Koelle of the Orange County Superior Court.
¶ 33 Exhibit 2 is the felony complaint filed in cause no. 93392 in the Municipal Court of the South Judicial District of Orange County, California on May 26, 1992. The complaint alleged that on May 23, 1992, Winings committed three counts of first degree burglary of an inhabited dwelling house and one count of felony possession of a controlled substance.
¶ 34 Exhibit 3 is Winings' statement on plea of guilty in cause no. 93395 for felony possession of a controlled substance for sale, which was also signed on June 3, 1992. The minute order states that this crime was a felony and that Winings was sentenced to 10 days in jail by Judge Arthur Koelle of the Orange County Superior Court. Exhibit 3 also includes the felony complaint, alleging that Winings committed this crime on May 20, 1992.
¶ 35 Finally, exhibit 5 is a certified abstract of judgment, showing that on June 3, 1992, Winings was convicted of three counts of first degree burglary and possession of a controlled substance. Together, these documents amply demonstrate that Winings was convicted of three counts of first degree burglary, possession of a controlled substance, and possession of a controlled substance for sale.
¶ 36 Second, Winings asserts that the State failed to prove that his out-of-state convictions are comparable to Washington felonies. Under RCW 9.94A.525(3), "[o]ut-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law." The statute's purpose is to give an out-of-state conviction the same effect as if it had been rendered in state, or to treat a person convicted outside the state as if he or she had been convicted in Washington. State v. Cameron, 80 Wash.App. 374, 378, 909 P.2d 309 (1996).
¶ 37 To carry out this purpose, we (1) identify the comparable Washington offense; (2) classify the comparable Washington offense; and (3) treat the out-of-state conviction as if it were a conviction for the comparable Washington offense. Cameron, 80 Wash.App. at 378-79, 909 P.2d 309. In identifying the comparable Washington offense, we compare the elements of the out-of-state crime with the elements of potentially comparable Washington crimes. Cameron, 80 Wash.App. at 379, 909 P.2d 309. And in classifying the comparable Washington offense, we ask whether it is a felony under Washington law, and if so, whether it is an A, B, or C felony. Cameron, 80 Wash.App. at 379, 909 P.2d 309.
¶ 38 The State bears the burden of establishing the classification of prior out-of-state convictions, but the sentencing court may properly rely on a stipulation or acknowledgment to support a determination of classification. State v. Hunter, 116 Wash.App. 300, 301, 65 P.3d 371 (2003), aff'd, 152 Wash.2d 220, 95 P.3d 1225 (2004). Where a defendant affirmatively agrees with the State's classification of out-of-state convictions, the sentencing court may include the convictions in the defendant's offender score without further proof of classification. Hunter, 116 Wash.App. at 301, 65 P.3d 371.
¶ 39 Here, Winings affirmatively acknowledged the correctness of the State's classification of his California convictions. At sentencing, the prosecutor argued that the three first degree burglary counts are comparable to residential burglary offenses in Washington and that the possession of a controlled substance and possession of a controlled substance for sale counts are comparable to Washington offenses of the same title, giving Winings an offender score of five. In response, Winings argued that his offender score was four because his guilty plea to possession of a controlled substance for sale was part of his plea bargain regarding the simple possession charge. But he did not challenge the State's classification of these crimes. In arguing that his offender score was four, Winings indicated that he agreed with the State's classification of his California *152 convictions under Washington law. Consequently, the court was not required to consider any further proof.
¶ 40 Moreover, the State provided ample evidence regarding the classification of his California convictions. On June 3, 1992, Winings pleaded guilty to felony complaints charging that he (1) committed first degree burglary of an inhabited dwelling house by "willfully and unlawfully enter[ing] an inhabited dwelling house ... with the intent to commit larceny and any felony"; (2) committed possession of a controlled substance by "willfully and unlawfully hav [ing] in his[ ] possession a controlled substance, to wit, COCAINE"; and (3) committed possession of a controlled substance for sale by "willfully and unlawfully possess[ing] for sale and purchas[ing] for sale a controlled substance, to wit: COCAINE.[11]" Ex. 2-3.
¶ 41 Winings' conviction of first degree burglary is comparable to residential burglary as defined in RCW 9A.52.025. That statute provides that "[a] person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle," and classifies residential burglary as a class B felony. RCW 9A.52.025 (emphasis added). Winings' conviction of possession of a controlled substance is comparable to RCW 69.50.4013, which provides that "[i]t is unlawful for any person to possess a controlled substance" and classifies that crime as a class C felony. (Emphasis added). And Winings' conviction of possession of a controlled substance for sale is comparable to RCW 69.50.401(1), which provides that "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." (Emphasis added). Under that statute, a violation with respect to cocaine, which is a schedule II drug, is a class B felony. RCW 69.50.206(a) and (b)(4)-(6); RCW 69.50.401(2)(a).
¶ 42 Third, Winings argues that his out-of-state convictions should not have been included in his offender score because they had "washed out." Br. of Appellant at 37. Winings is in error. In State v. Varga, 151 Wash.2d 179, 183, 86 P.3d 139 (2004), our Supreme Court held that the 2002 amendments to the SRA require that sentencing courts include previously "washed out" prior convictions in calculating a defendant's offender score at sentencing for crimes committed on or after June 13, 2002. Since Winings committed his crime on March 24, 2003, the sentencing court properly included his previously "washed out" convictions.
¶ 43 A majority of the panel having determined that the following portion of the opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: QUINN-BRINTNALL, C.J. and HOUGHTON, J.
NOTES
[1] The minute orders (one minute order pertains to the first degree burglary counts and the possession of a controlled substance count and the other pertains only to the possession of a controlled substance for sale count) include the cause number and the judge's name, indicate that Winings pled guilty to the charges, list the charges and whether they are felonies and their maximum penalties, and state Wining's sentence.
[2] These documents were, however, submitted to this court as exhibits 1-5.
[3] In addition, Winings' argument is not supported by the cases he cites. In each of these cases, the court found the charging instrument constitutionally deficient because it failed to allege an essential element of the crime charged  not because the instrument was otherwise factually deficient as Winings asserts. See State v. Clowes, 104 Wash.App. 935, 940, 18 P.3d 596 (2001) (holding that failure to identify the victim where the charge was interfering with domestic violence reporting is an omission of an essential element because the crime must be committed against a family or household member); and State v. Franks, 105 Wash.App. 950, 959, 22 P.3d 269 (2001) (holding that failure to identify the defendant in the information is an omission of an essential element because the primary purpose of the charging document is to inform the defendant of the nature of the accusations brought against him). And in State v. Royse, 66 Wash.2d 552, 555-57, 403 P.2d 838 (1965), the court reversed the trial court's denial of the defendant's motion for a bill of particulars, which requested that the State identify the specific felony that he was charged with under second degree assault with the intent to commit a felony.
[4] We note that under State v. Hale, 65 Wash.App. 752, 756, 829 P.2d 802 (1992), the State was not required to inform Winings of the maximum sentence in the information.
[5] RCW 9.94A.602 provides in relevant part:

For purposes of this section, a deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death. The following instruments are included in the term deadly weapon: Blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas.
(Emphasis added).
[6] The plain language of this statute also refutes the State's argument that a sword is a deadly weapon per se based on its use throughout history.
[7] "[A]n appellate court may sustain a trial court on any correct ground, even though that ground was not considered by the trial court." Nast v. Michels, 107 Wash.2d 300, 308, 730 P.2d 54 (1986).
[8] We disagree with Division One in the holding of Nicholson, 119 Wash.App. at 860, 84 P.3d 877. The Nicholson court found that these three definitions are alternative means of committing the crime of assault. Nicholson, 119 Wash.App. at 860, 84 P.3d 877. Here, the trial court instructed the jury on all three definitions of assault, including attempted battery. Instruction 6 provides, "[a]n assault is also an act done with intent to inflict bodily injury upon another, tending, but failing to accomplish it." CP at 26. And the jury returned a general verdict that did not discern which alternative it relied on. We disagree that this is an alternative means case.
[9] The minute order showing Winings' conviction for three counts of first degree burglary and possession of a controlled substance  cocaine is stapled to his plea of guilty to these charges and marked as exhibit 1. None of these documents are stamped as certified. However, the information charging Winings with these crimes is certified and states, "I hereby certify the forgoing instrument consisting of 7 page(s) is a true and correct copy." Ex. 2. Whether the superior court clerk for Orange County intended to certify the minute order and Winings' guilty plea is unclear because together these documents consist of only five pages. In exhibit 3, the minute order showing Winings' conviction for possession of a controlled substance  cocaine for sale is stapled to his plea of guilty and the information charging him with that offense. The information is certified and indicates that five pages were included. Together, these documents do encompass five pages. The abstract of judgment is certified and was stamped on July 20, 1992.
[10] Winings also pleaded guilty to other crimes that are not the subject of this appeal.
[11] Winings argues that it is insufficient to classify out-of-state convictions by looking at the related charging documents rather than the relevant California statutes. However, the charging documents submitted state the elements of the charged California offenses, thereby permitting the court to classify those crimes.