IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34729-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FREDERICK DEL ORR, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Frederick Orr appeals from his convictions for second degree assault and first degree burglary, both of which were committed with a deadly weapon, and his ensuing persistent offender sentence. Concluding that the evidence supported the first degree burglary conviction, there was no basis for instructing the jury on defense of others, and that Mr. Orr's constitutional challenges are without merit, we affirm.

FACTS

Mr. Orr was charged with the two noted offenses after breaking into an occupied house in northwest Spokane while armed with a metal pipe and then attempting to fight his way off the property. According to Mr. Orr, 41 at the time of these charges, he was living on the streets of Spokane when an acquaintance named Sean told him that a man known as "Sasquatch" was obtaining sexual favors from Sean's girlfriend in exchange for

drugs. Sasquatch also was alleged to be holding children against their will. These events were allegedly happening at a house on West Gardner Avenue.

Deeply upset because of abuse he himself had suffered while a child, and having heard in prison sex offenders discuss their treatment of children, Mr. Orr approached a house at 2620 West Gardner Avenue and began knocking on doors and windows. Frightened when her back door was broken down, Liv Nelson grabbed her child and fled out the front door. She observed Mr. Orr just inside the door, holding a metal pipe.[1]

Mr. Orr, now aware that he had not found Sasquatch's lair, left the house and went into the backyard. Neighbors had observed his actions and several had gathered to assist Ms. Nelson. One of them, Dale Wills, had armed himself with a gun. An argument ensued between Wills and Orr, with Orr several times swinging his metal pipe at Wills' head while challenging Wills to shoot him. Eventually acknowledging that he had the wrong house, Orr dropped his pipe. The police soon arrived and arrested Orr. He told them that if he found children in peril, "all I know is I'm going to kick somebody's ass. I won't kill them, but they deserve an ass whopping." Report of Proceedings (RP) at 313-314.

Mr. Orr testified at the ensuing jury trial that he never swung the pipe at Wills, but did gesture with it while speaking. He further testified that he carried the pipe throughout the entire incident with the intent of scaring or hitting someone if necessary.

---

[1] The pipe was later identified as the leg of a camp stove.

The defense sought a defense of others self-defense instruction on the burglary count, but the court rejected the request because there was no objective evidence to support the instruction. The court did permit a self-defense instruction as to the assault against Mr. Wills and also gave an instruction on the inferior degree offense of fourth degree assault. The jury convicted Mr. Orr of first degree burglary of the Nelson house while armed with a deadly weapon and second degree assault against Mr. Wills while armed with a deadly weapon.

The court sentenced Mr. Orr to life in prison as a persistent offender. He previously had been convicted in 1993, at age 19, of second degree robbery. In 1995, while age 21, he pleaded guilty to a crime of first degree robbery. Four years later, he was sentenced to 20 years in prison for five felony offenses. He was released from custody in January 2014, little over a year before the current incident.

Mr. Orr timely appealed to this court. A panel heard oral argument on the matter.

ANALYSIS

This appeal challenges the sufficiency of the evidence to support the first degree burglary conviction, the failure to grant a self-defense instruction on that charge, and the constitutionality of the persistent offender sentencing statute. We will address the arguments in the order listed.

*Sufficiency of the Evidence*

The initial challenge is to the sufficiency of the evidence to support the element of first degree burglary that Mr. Orr was armed with a deadly weapon. He contends that because no one was present against whom he could threaten to use the pipe, he was not "armed" at the time of the crime.

As charged here, to convict of first degree burglary, the State had to establish, among other elements, that Mr. Orr unlawfully entered the Nelson house with the intent to commit a crime against a person or property therein and, while in the building and in immediate flight therefrom, he was armed with a deadly weapon. RCW 9A.52.020(1)(a); Clerk's Papers (CP) at 38, 170. The jury was instructed that a deadly weapon:

> means any weapon, device, instrument, substance, or article which under the circumstances in which it is used, attempted to be used, or threatened to be used is readily capable of causing death or substantial bodily harm.

CP at 160. This instruction reflects a portion of the language of RCW 9A.04.110(6), defining the term "deadly weapon" when the weapon in question is not a firearm or explosive device.

Sufficiency of the evidence challenges are reviewed under very well settled standards. Appellate courts assess such challenges to see if there was evidence from which the trier of fact could find each element of the offense proven beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The reviewing

4

court will consider the evidence in a light most favorable to the prosecution. *Id.* This court also must defer to the finder of fact in resolving conflicting evidence and credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Relying on the definition of "deadly weapon" contained in instruction 13 (above), Mr. Orr argues there was no evidence that the pipe was "used, attempted to be used, or threatened to be used" because he encountered no one in the building once he broke in. His focus is too narrow.

The meaning of RCW 9A.04.110(6) in the "attempted use" context was at issue in *In re Personal Restraint of Martinez*, 171 Wn.2d 354, 256 P.3d 277 (2011). There the petitioner had been interrupted in the course of burglarizing a rural building and fled upon the arrival of a deputy sheriff. *Id.* at 357-358. The deputy eventually caught the burglar and tackled him. *Id.* at 358. At that point the officer noted that the burglar was wearing a knife sheath, but had no knife; the knife was later located on the ground about 15 feet from the building. *Id.* Mr. Martinez was convicted of first degree burglary based on his possession of the deadly weapon during the crime and flight therefrom.

The Washington Supreme Court noted that Mr. Martinez had neither used nor threatened to use the knife, so treated the case as a matter of attempted use. *Id.* at 368. In cases of a deadly weapon "in fact," courts must look to the totality of the circumstances to determine whether the defendant was armed with a deadly weapon. *Id.* at 368 n.6. The court concluded that no one saw Mr. Martinez with the knife or even attempt to

5

reach the knife, and he "manifested no intent to use it." *Id*. at 368. The most that could be said was that the knife's sheath had been unfastened. *Id*. at 369. In those circumstances, the evidence was insufficient to find that the defendant was armed with a deadly weapon. *Id*. at 368-369. The court expressly distinguished *State v. Gotcher*, 52 Wn. App. 350, 759 P.2d 1216 (1988). *Id*. at 368. There, during a struggle, the defendant had reached for the pocket in which he kept his knife, thus evidencing his intent to use the weapon. *Id*.

Mr. Orr relies heavily on *Martinez*, arguing there was no evidence that he attempted to use the pipe as a club, largely because there was no one to use the club against. Although we agree there was no threatened use of the pipe, we question whether or not Mr. Orr actually used the pipe in the course of the burglary. Nonetheless, even if we analyze this solely as an attempted use case a la *Martinez*, we conclude that it is closer to the *Gotcher* example of attempted use than it is to the *Martinez* nonuse situation.

As noted, in *Gotcher* the act of reaching for a pocket where the defendant had a knife was sufficient to demonstrate attempted use of the deadly weapon. The facts of this case demonstrate even more attempted use of the club as a deadly weapon. Mr. Orr articulated his intent to use the weapon both to the police who arrested him and to the jury. He was armed with the club prior to breaking into the house, although our record does not demonstrate whether he used the club when forcing his entry into the building. He carried the club out of the house and then used it against Mr. Wills. Unlike *Martinez*,

6

here the totality of the circumstances evinced Mr. Orr's intent to use the weapon but for

the absence of the man he sought.[2]  By arming himself prior to the entry, and breaking

into the home with the expressed intent to use the weapon against Sasquatch, Mr. Orr

attempted to use a deadly weapon.

Accordingly, the evidence allowed the jury to conclude that Mr. Orr was armed

with a deadly weapon when he entered the Nelson home.  The evidence was sufficient to

support the jury's verdict.

*Defense of Others Instruction*

Mr. Orr also argues that the trial court erred by failing to give a defense of others

instruction concerning the burglary charge.  However, Mr. Orr's subjective belief that

others needed rescuing was not a sufficient basis for giving such an instruction.

Once again, well settled standards govern review of this claim.  RCW

9A.16.020(3) permits the use of force against another person in certain circumstances,

including when lawfully aiding in preventing or attempting to prevent an offense against

a party about to be injured.  A criminal defendant is entitled to an instruction on his

theory of the case if the evidence supports the instruction.  *State v. Werner*, 170 Wn.2d

333, 336, 241 P.3d 410 (2010).  More specifically, a defendant is entitled to a defense of

---

[2] The unarticulated premise of Mr. Orr's argument is that there can never be a first degree burglary of an unoccupied building unless the defendant is armed with a firearm or an explosive device.  This runs counter to the legislative determination that neither factual nor legal impossibility is a defense to an attempted crime.  RCW 9A.28.020(2).

another instruction if there is "some evidence" demonstrating defense of another. *State v. Marquez*, 131 Wn. App. 566, 578, 127 P.3d 786 (2006). When a trial court refuses to give a self-defense instruction because it finds no evidence supporting the defendant's subjective belief of imminent danger of great bodily harm, the standard of review on appeal is abuse of discretion. *State v. Read*, 147 Wn.2d 238, 243, 53 P.3d 26 (2002).

The trial court must evaluate evidence of self-defense "from the standpoint of a reasonably prudent person who knows all the defendant knows and sees all the defendant sees." *Id*. at 242. This analysis involves both subjective and objective components. *Id*. at 242-243. For the subjective component, the court must "place itself in the defendant's shoes and view the defendant's acts in light of all the facts and circumstances the defendant knew when the act occurred." *Id*. at 243. For the objective component, the court must "determine what a reasonable person would have done if placed in the defendant's situation." *Id*. The same approach applies to the defense of another. *Marquez*, 131 Wn. App. at 575.

Defense of another is permitted when: (a) the defendant would be justified in using force to defend himself against the same injury being threatened against the third party, (b) under the circumstances as understood by the defendant, the third party would be justified in using force to protect himself or herself, and (c) the defendant believes that the intervention is necessary to protect the third party. *State v. Penn*, 89 Wn.2d 63, 66, 568 P.2d 797 (1977). Critically, the person the defendant seeks to protect must be

8

present at the time.  If there is no evidence that any "victims" were present, the defendant has no right to defend them.  *State v. Trevino*, 10 Wn. App. 89, 99, 516 P.2d 779 (1973) (discussing previous justifiable homicide statute, former RCW 9.48.170 (1973)) ("The statute has no application to a situation involving the defense of an absent person.").

The proposed instruction certainly foundered on the last requirement.  There was no one inside the Nelson home who needed protecting.  For that reason, among others,[3] the trial court did not abuse its discretion.  There was no basis for instructing on defense of others.

*Sentencing Challenges*

Mr. Orr also raises two challenges to the persistent offender sentencing scheme. This court has previously rejected both challenges, so we need not discuss them at any length.

First, Mr. Orr contends that the persistent offender statute does not account for his youth at the time he committed the first two "strike" offenses.  He was 19 and 21, respectively, when he committed the earlier "most serious offenses."  This argument fundamentally fails because Mr. Orr was not a youthful offender at age 41 and he is not now being punished once again for those earlier offenses.  *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 363, 759 P.2d 436 (1988).  To the extent that youthful

---

[3] It also was not reasonable for Mr. Orr to believe his intervention was necessary. A call to law enforcement would have sufficed.

9

immaturity is considered when sentencing youthful offenders and those just out of their minority, it is factored into the *sentence* they receive rather than into the determination of guilt or innocence. It is only the fact of guilt that has consequence today, not any mitigated punishment imposed two decades earlier. Simply put, the age at which Mr. Orr committed his earlier offenses is of no concern in this case.

This court previously rejected this argument in *State v. Hart*, 188 Wn. App. 453, 462-465, 353 P.3d 253 (2015). Similarly, the Washington Supreme Court has consistently rejected a somewhat similar challenge to the persistent offender statute. *State v. Witherspoon*, 180 Wn.2d 875, 887-891, 329 P.3d 888 (2014). That court also has previously rejected a variety of constitutional challenges to the persistent offender statute. *E.g.*, *State v. Thorne*, 129 Wn.2d 736, 921 P.2d 514 (1996).

Mr. Orr also contends that the prior convictions should have been submitted to a jury rather than have been found by a trial judge. However, the United States Supreme Court has expressly exempted prior convictions from the scope of the Sixth Amendment right to a jury trial. *Blakely v. Washington*, 542 U.S. 296, 303-304, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Almendarez-Torres v. United States*, 523 U.S. 224, 239, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998). Washington courts are in accord. *Witherspoon*, 180 Wn.2d at 891-894; *State v. Williams*, 156 Wn. App. 482, 498, 234 P.3d 1174 (2010).

There is no right to require proof of a prior conviction to a jury in a persistent

offender sentencing case. Mr. Orr's argument is without merit.

The convictions and sentence are affirmed. In light of the determination that Mr.

Orr is a persistent offender and will likely be unable to repay appellate costs, we grant his

motion to deny costs.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

I CONCUR:

_____
Lawrence-Berrey, C.J.

No. 34729-0-III

FEARING, J. — (dissenting in part, concurring in part) I disagree with the majority that sufficient evidence sustains Frederick Orr's guilty verdict for first degree burglary. I concur in the remainder of the majority's rulings, including the ruling that upholds the sentence of life in prison. The conviction for second degree assault of Dale Wills alone qualifies Frederick Orr for the life sentence. I disagree with some of the reasoning employed by the majority in upholding the sentence and thus concur in the result only as to the sentence.

As to the charge of first degree burglary, this appeal asks if Frederick Orr used a "deadly weapon" in the course of the burglary within the meaning of the term's definition found in RCW 9A.04.110(6). The State presented evidence that Orr, a homeless transient, entered the Nelson abode without permission and with a two-foot metal pipe in hand. Traci Pronto, an investigating officer, described the pipe as one of four metal legs from a camp stove.

Officer Traci Pronto testified to the injuries that could result from the use of the pipe:

> Q And based on your experience and what you've personally observed, what kind of injuries can be inflicted with a weapon such as this?
> A Well, really depending on—on who's swinging it and how hard it is and where they connect at. I mean, that can do pretty good damage. If someone were to get hit in the head with that, I would suspect it would cause a skull fracture or something; some pretty good damage.

Report of Proceedings (RP) at 193.

Frederick Orr testified to his behavior on the day of the entry into the Nelson home. He entered the home because he believed, from a conversation with Sean, that a big dude, nicknamed Sasquatch, abused people, including children, inside the home. Orr did not request law enforcement assistance to apprehend Sasquatch, because he inhabits a world where denizens do not call the police. Orr intended to use the pipe to scare and strike Sasquatch. He characterized his prospective swinging of the pipe as an "ass whooping." RP at 313-14. Nonetheless, the State presented no evidence of Orr using the pipe when entering, while inside, or when leaving the Nelson dwelling. Orr planned to swing the pipe if he encountered Sasquatch, but he never encountered the big, malevolent dude so he never attempted to employ the pipe inside the home.

The statute defining first degree burglary, RCW 9A.52.020(1), provides:

> A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person.

2

The evidence showed that Frederick Orr entered the Nelson residence with the intent to assault Sasquatch such that he intended to commit a crime against a person inside the dwelling. Thus, the State satisfied this first element of the crime.

First degree burglary under RCW 9A.52.020 requires the State to prove, among other elements, that the defendant armed himself with a deadly weapon or assaulted another person. *In re Personal Restraint of Martinez*, 171 Wn.2d 354, 364, 256 P.3d 277 (2011). Although the State convicted Frederick Orr of assaulting Dale Wills, the State does not rely on this assault to convict on first degree burglary perhaps because Wills never inhabited the burglarized Nelson home. Instead, the State relies on the deadly weapon alternative to prove first degree burglary and contends that the two-foot pipe held by Orr, when entering the Nelson home, constituted a deadly weapon because Orr intended to pummel Sasquatch inside the home with the pipe. The State identifies the ogre Sasquatch, not Liv Nelson or Nelson's daughter, as a subject of the assault. In turn, Orr argues that mere possession of a deadly weapon does not qualify for first degree burglary. He further contends that the State presented insufficient evidence of use or attempted use of the pipe in order to convict him of the crime. I agree with Orr.

The term "armed" as used in RCW 9A.52.020(1)(a) means a weapon readily accessible and available for use. *State v. Gotcher*, 52 Wn. App. 350, 353, 759 P.2d 1216 (1988); *State v. Randle*, 47 Wn. App. 232, 235, 734 P.2d 51 (1987). I assume that Frederick Orr "armed himself" with the metal pipe, since he does not argue to the contrary. I move to the next element of the crime, the accused being armed with a

3

No. 34729-0-III
*State v. Orr* (dissenting in part, concurring in part)

"deadly weapon."

RCW 9A.04.110(6) defines "deadly weapon" for purposes of first degree burglary

as:

> "Deadly weapon" means any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, *under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.*

(Emphasis added.) This definition also applies to the crime of second degree assault

when the State charges the crime based on use of a deadly weapon. RCW

9A.36.021(1)(c). A distinct definition applies to a mandatory minimum sentence based

on the use of a deadly weapon. RCW 9.95.040. Note that, under RCW 9A.04.110(6), the

deadly weapon need not be capable of inflicting death, only substantial bodily harm.

RCW 9A.04.110(6) creates two classes of deadly weapons: (1) any explosive or

loaded or unloaded firearm, and (2) any other weapon or instrument which, under the

circumstances in which the accused uses it, attempts to use it, or threatens to use it, is

readily capable of causing death or serious bodily injury. *In re Personal Restraint of

Martinez*, 171 Wn.2d at 365 (2011). Under Washington law, the first category of per se

deadly weapons reviews the nature of the weapon and the second category of

circumstantial deadly weapons addresses the method of use of the weapon. The trier of

fact need not determine any willingness or present ability to use the firearm or explosive

as a deadly weapon. *State v. Gotcher*, 52 Wn. App. at 354.

A weapon included in the second category as a circumstantial deadly weapon does

4

not qualify as a per se deadly weapon, but the State must show that, under the circumstances the accused used, attempted to use, or threatened to use the weapon in a manner readily capable of causing death or serious bodily injury. *State v. Gotcher*, 52 Wn. App. at 354. Within the second category, the inherent capacity and the circumstances in which the accused used the weapon control the deadly nature of the weapon. *State v. Skenandore*, 99 Wn. App. 494, 499, 994 P.2d 291 (2000). Circumstances include the intent and present ability of the user, the degree of force, the part of the body to which the accused applied the weapon, and the physical injuries inflicted. *State v. Skenandore*, 99 Wn. App. at 499. The trier of fact ascertains ready capability in relation to surrounding circumstances with reference to potential substantial bodily harm. *State v. Skenandore*, 99 Wn. App. at 499. The accused must manifest a willingness to use the weapon before the trier of fact may categorize the weapon as deadly. *State v. Gotcher*, 52 Wn. App. at 354.

The principles of law listed in deadly weapon decisions and recited above fall short in aiding a reviewing court. Those principles alternate between the potentiality of the harm controlling and the actual harm imposed dominating the outcome. The principles oscillate also between the accused's intent and the accused's actions as significant to the result. Thus, I review the facts of individual decisions to discern whether to concentrate on the accused's intent and the weapon's potential for harm, on the one hand, or the accused's actions and the actual harm suffered by a victim, on the other hand. I include in the discussion decisions involving prosecutions for second

5

degree assault, since no decision construes the definition found in RCW 9A.04.110(6) differently depending on whether the State charges the accused with second degree assault or first degree burglary.

I initially note that if the court examined only the potentiality of harm, the court would need to consider a paper clip a deadly weapon, since the clip could pierce the victim's eyeball and render the victim sightless. If the court assessed only the intent of the accused, the court would need to deem all weapons deadly weapons, no matter how used by the accused, if the accused hope to inflict substantial bodily injury.

I survey deadly weapon decisions in chronological order. In *State v. Gotcher*, 52 Wn. App. 350 (1988), Norman Gotcher and a companion broke into a residence. Law enforcement later apprehended the intruding duo inside the residence. Police found valuables from the residence in Gotcher's possession. Gotcher also held in a coat pocket a partially opened switchblade knife with a blade four-and-one-half inches long. During closing argument, the State argued that the knife qualified as a deadly weapon. According to the State, possession of the knife was sufficient to convict regardless of whether Gotcher intended to use the weapon to further the burglary. This court reversed the conviction because of the misstatement of the law by the State.

The *Gotcher* court refused, however, to dismiss the charge of first degree burglary but remanded for a new trial. The court held that, viewing the evidence in the light most favorable to the State, evidence sufficed from which the jury could find all the essential elements of the crime beyond a reasonable doubt. This court decided *State v. Gotcher*

6

before the Washington Supreme Court's decision in *In re Personal Restraint of Martinez*, 171 Wn.2d 354 (2011), discussed below.

In *State v. Carlson*, 65 Wn. App. 153, 828 P.2d 30 (1992), this court ruled that a BB gun, under the circumstances of its use, did not constitute a deadly weapon. Todd Carlson approached Cliff Ewell with what appeared to be a rifle. Carlson pointed the gun at Ewell, and held the barrel inches from his face. Ewell grabbed the barrel of the gun and pushed it away. Ewell testified that Carlson stepped back and held the gun as if preparing to strike him with it. Carlson, however, did not strike Ewell, but turned and walked away. Carlson testified that the gun was an inoperative, unloaded, sawed off BB gun. Carlson also testified that the safety switch was on and that the gun was incapable of firing in any event. Carlson did not tell Ewell that it was a BB gun nor did he tell Ewell that the gun was inoperative. Carlson testified that he pointed the BB gun at Ewell to intimidate and frighten him. Based on Carlson's testimony that the gun was inoperable, we held that the State submitted insufficient evidence to show the gun was readily capable of causing substantial bodily harm and constituted a deadly weapon.

In *State v. Shilling*, 77 Wn. App. 166, 889 P.2d 948 (1995), we affirmed James Shilling's conviction for assault with a deadly weapon. Shilling threw a drinking glass at the head of a bar bouncer after the bouncer grabbed the overserved Shilling's alcohol glass. The blow from the glass knocked off the bouncer's eyeglasses. The drinking glass broke on impact and glass shards flew fifteen feet. The bouncer's face suffered lacerations and demanded five stitches. One glass shard fell from the bouncer's head one

7

month later. Expert testimony showed that the glass could have fractured the bouncer's nose and caused permanent scarring. Since the glass did not qualify as a deadly weapon per se, this court analyzed the circumstances under which Shilling utilized the glass. Shilling admitted that the glass carried the inherent capability of causing substantial bodily harm.

*State v. Taylor*, 97 Wn. App. 123, 982 P.2d 687 (1999) contrasts with *State v. Carlson*, 65 Wn. App. 153 (1992), previously discussed. Charles Taylor held a BB gun to the head of three trespassing teenagers and threatened to blow the youths' respective "'fucking brains out.'" *State v. Taylor*, 97 Wn. App. at 125. Taylor appealed his conviction for second degree assault and argued that the State did not prove the BB gun to be a deadly weapon. We disagreed. The evidence showed that Taylor threatened to use the gun to shoot the boys in a way that would have caused substantial bodily harm.

In *State v. Skenandore*, 99 Wn. App. 494 (2000), the State charged Neil Skenandore, an inmate at the Clallam Bay Corrections Center, with second degree assault. Skenandore assaulted Corrections Officer Jason Jones with a homemade spear two-and-one-half feet to three feet long, fashioned from writing paper rolled into a rigid shaft bound with dental floss, affixed to a golf pencil. As Jones peered through the viewing window on the left side of Skenandore's cell door, he bent over to pass breakfast through a locked portal in the door. The spear struck Jones twice on the chest and once on the arm. The spear did not tear the shirt, but left pencil marks on Jones' left shirt pocket, near the center of the chest, and on the left sleeve. The makeshift spear also left

8

indented red marks but did not break Jones' skin.  A physician assistant examined Jones,

but prescribed no treatment.  The marks on Jones' chest evaporated within two hours.

The State argued to the jury that a sharpened pencil in the eye could cause substantial

bodily injury and thus the spear qualified as a deadly weapon.

This court, in *State v. Skenandore*, reversed Neil Skenandore's conviction for

second degree assault and dismissed the charges based on insufficiency of evidence.  We

reasoned that the State failed to present evidence that the homemade spear functioned as

a deadly weapon.  Although under some circumstances the spear used by Skenandore

might be shown to be a deadly weapon, the record did not demonstrate that the

instrument served as a per se deadly weapon.  The State presented no testimony regarding

the spear's potential for substantial bodily harm had Skenandore struck Jones on the face

or in the eye.  The record did not reflect that Jones placed his face near the cuff port such

that the spear could have struck his eye.  The three blows all landed on Jones' upper

torso, well below his head.  The cell door that separated Jones and Skenandore restricted

the spear's movement.  Thus, the surrounding circumstances inhibited the spear's

otherwise potential, but unproven, ready capability to inflict substantial bodily harm.  The

red indentations on Jones' chest faded within hours of the assault.  Thus, no rational trier

of fact could have found that Skenandore's spear was readily capable of causing death or

substantial bodily harm under the circumstances in which Skenandore used it.

In *State v. Barragan*, 102 Wn. App. 754, 9 P.3d 942 (2000), we affirmed the

conviction of Miguel Barragan for first degree assault by reason of using a pencil as a

deadly weapon.  Barragan resided in jail with Steven Garcia.  The two physically fought.

Barragan swung first and told Garcia, "'You're gonna die.'"  *State v. Barragan*, 102 Wn.

App. at 759.  As Garcia pushed an intercom alarm button, Barragan picked up a pencil

from the floor and swung it toward Garcia's left eye.  Garcia blocked the first swing, but

only partially blocked a second blow, which struck him in the left temple.  The pencil

shattered as it hit Garcia's head, and over one-half inch of it embedded into his temple.

An officer who used forceps to remove the pencil from Garcia's temple later testified that

it was as difficult to remove as a nail.  The actual wound, however, was not serious.  We

noted that a pencil poke could blind the victim.

In *State v. Winings*, 126 Wn. App. 75, 107 P.3d 141 (2005), Ryan Winings

appealed his conviction of second degree assault while armed with a deadly weapon.

Daniel Warner visited Tracy Neitzel's residence to show him a sword he recently

acquired.  Warner joined other guests at the home, including Winings, who imbibed

alcohol.  Warner displayed the sword to his friends, when Winings grabbed the sword

and pulled it from its sheath.  Winings swung the sword in the air and then poked Warner

in the chest with the sword.  Warner exclaimed: "'ow that hurts,'" after which Winings

stabbed Warner in the foot with the sword.  *State v. Winings*, 126 Wn. App. at 81. The

sword cut a hole in Warner's leather shoe.  Warner received a small cut on his toe.

Warner did not seek medical attention for his foot.

On appeal, Ryan Winings assigned error to the trial court's refusal to deliver a jury

instruction for an inferior degree of assault.  He argued that the evidence could also

support a finding that he employed a nondeadly weapon and emphasized that Warner did not suffer serious injury. We observed that, if Winings had landed the sword in a slightly different manner, the sword could have severed the toe. We ruled that the trial court committed no error.

In *State v. Baker*, 136 Wn. App. 878, 151 P.3d 237 (2007), Shappa Baker deliberately drove his car into a police car and a police motorcycle. We held the evidence sufficient to convict Baker of first and second degree assault with a deadly weapon, his vehicle.

In *State v. Gamboa*, 137 Wn. App. 650, 154 P.3d 312 (2007), this court held that Joaquin Gamboa's possession of a machete as he burglarized a home constituted the use, attempted use, or threatening of use of a deadly weapon for purposes of first degree burglary. We agreed with the State's contention that Gamboa armed himself with a deadly weapon merely because Gamboa held the weapon and the machete was readily capable of causing death. We reasoned:

> It is the potential as a weapon and not how the machete was actually used [was] important. . . . It is rather the potential for inflicting bodily injury or death that counts. . . . It was not necessary for the homeowners to appear and for Mr. Gamboa to brandish the machete for it to qualify as a deadly weapon. A machete is readily capable of causing great harm by its very nature and size.
> . . . .
> The question is whether the machete was "'easily accessible and readily available for use by the defendant for either offensive or defensive purposes.'"

*State v. Gamboa*, 137 Wn. App. at 653 (internal citations omitted). If *State v. Gamboa*

11

remained good law, I would affirm Frederick Orr's conviction for first degree burglary.

In *State v. Hoeldt*, 139 Wn. App. 225, 160 P.3d 55 (2007), this court held a pit bull dog constituted a deadly weapon under the circumstances in which the accused employed the dog. Robbie Hoeldt held, by the collar, his powerful, barking, and growling pit bull. Hoeldt released the dog, who then charged a law enforcement officer and lunged at the officer's throat and chest.

In *In re Personal Restraint of Martinez*, 171 Wn.2d 354 (2011), Washington's leading decision on the subject of a deadly weapon, Raymond Martinez challenged his conviction for first degree burglary, by contending that the State failed to prove beyond a reasonable doubt that he armed himself with a deadly weapon within the meaning of RCW 9A.04.110(6). The state high court agreed and vacated the conviction. Grant County Sheriff Deputy Joseph Wester spied Raymond Martinez rummaging in a rural farm shop. Deputy Wester shined his flashlight on Martinez, drew his gun, and commanded Martinez to stop. Martinez fled, but Wester chased and eventually tackled him. Deputy Wester then noticed an empty knife sheath on Martinez's belt. Later, law enforcement officers retraced the path on which the chase had occurred and located a knife with a fixed blade in the mud, about fifteen feet from the farm shop. The State argued that the knife constituted a deadly weapon for purposes of first degree burglary. Martinez contended he had neither used nor threatened to use his knife during the alleged burglary.

The *Martinez* court rejected the State's contention that mere possession of the

knife by Raymond Martinez when he entered the farm shop constituted being armed with a deadly weapon. The court reasoned:

> Under the plain meaning of this statute, mere possession is insufficient to render "deadly" a dangerous weapon other than a firearm or explosive. To interpret the statute otherwise would eliminate the distinction between deadly weapons per se (firearms and explosives) and deadly weapons in fact (other weapons). Likewise, it would render meaningless the provision as to the circumstances of use, attempted use, or threatened use.
>
> Thus, we hold that RCW 9A.04.110(6) requires more than mere possession where the weapon in question is neither a firearm nor an explosive. In accordance with the plain meaning of this statute, unless a dangerous weapon falls within the narrow category for deadly weapons per se, its status rests on the manner in which it is used, attempted to be used, or threatened to be used.

*In re Personal Restraint of Martinez*, 171 Wn.2d at 366.

The *Martinez* court concluded that, even when viewed in the light most favorable to the State, the evidence did not support a finding of Raymond Martinez arming himself with a deadly weapon. No one saw Martinez with the knife, and he manifested no intent to use it. No one saw Martinez reach for the knife at any time after his apprehension. Martinez did not have access to the knife during the scuffle with Deputy Wester. Viewed in the light most favorable to the State, the only evidence that Martinez attempted to use the knife was the unfastened sheath. In so ruling, the *Martinez* court disapproved of our decision in *State v. Gamboa*, because *Gamboa* characterized the machete as a deadly weapon on the sole basis of its inherent dangerousness rather than its actual, attempted or threatened use.

None of the Washington decisions analyze whether the accused "attempted" to

13

assault a victim with a deadly weapon for purposes of RCW 9A.04.110(6) by employing

the "substantial step" test applied under the attempted crime statute, RCW 9A.28.020(1).

The State may ask that we apply RCW 9A.28.020 for the purposes of assessing whether

Frederick Orr attempted to use a deadly weapon. The State writes that "Orr manifested a

clear intent to use the metal pipe on the inhabitants of the Nelson home and he took a

substantial step toward that end." Br. of Resp't at 11. Nevertheless, the evidence only

supports Orr possessing an intent to hurt Sasquatch, not the "inhabitants" of the

residence. One might guess that entering the home could constitute a step toward

attacking Sasquatch, but the State does not identify the substantial steps purportedly

taken by Orr that it claims entailed substantial steps. More importantly, the State presents

no case wherein a Washington court analyzes an attempt to arm oneself with a deadly

weapon as eliciting the same test required for an attempt under RCW 9A.28.020.

In holding that the State presented sufficient evidence of attempted use of a deadly

weapon, the majority writes: "[b]y arming himself prior to entry, and breaking into the

home with the expressed intent to use the weapon against Sasquatch, Mr. Orr attempted

to use the deadly weapon." Majority at 7. Yet, no Washington decision adjudges a

weapon as deadly simply by intent. Two sentences earlier, the majority declares: "He

[Frederick Orr] carried the club out of the house and then used it against Mr. Wills."

Majority at 6. When juxtaposing the two sentences, the reader wonders if the majority

bases its holding on an attempt to use a deadly weapon against Dale Wills, against

Sasquatch, or both.

14

If the majority relies on the use of the deadly weapon toward Dale Wills, the majority does not need to even concern itself with Frederick Orr arming himself with a deadly weapon, since Orr actually assaulted Wills. One commits the crime of first degree burglary when one assaults another in the immediate flight from the burglary regardless of whether one arms himself with a weapon, let alone a deadly weapon. RCW 9A.52.020(1). Nevertheless, the majority makes sure to hold that Orr armed himself with a deadly weapon.

If the majority bases its decision on an attempt to wield a deadly weapon against Dale Wills, the majority also grounds its ruling in an argument never made by the State. We do not decide appeals based on theories not raised by the parties. *FPA Crescent Associates, LLC v. Jamie's LLC*, 190 Wn. App. 666, 679, 360 P.3d 934 (2015). This court has bestowed no opportunity on Frederick Orr to address such a theory of criminal liability.

RCW 9A.52.020 allows a conviction for first degree burglary only if the use of the deadly weapon accompanies the entering of the dwelling, presence inside the dwelling, or immediate flight from the residence. The evidence does not support a finding that the assault on Dale Wills occurred during an immediate flight from the dwelling. Frederick Orr did not even flee the Nelson dwelling.

Frederick Orr possessed an intent to assault Sasquatch. Nevertheless, although Washington courts deem intent a factor for consideration, Washington courts rely on how the accused actually employed the weapon, not how he hoped to use the weapon

15

regardless of a real or illusory victim.  Washington decisions further rule that the accused must manifest the intent by some actions involving use of the weapon.  In each decision, the Washington court only held the defendant to be armed with a deadly weapon if the defendant actually wielded and used the weapon against a victim in the present, real world.

*In re Personal Restraint of Martinez*, 171 Wn.2d 354 (2011) and *State v. Skenandore*, 99 Wn. App. 494 (2000) suggest we consider the capability of the weapon under the circumstances of what actually transpired, not what might have happened.  Those circumstances include the intent and present ability of the user, the degree of force exerted, the part of the body to which the accused applied the weapon, and the physical injuries inflicted.  *State v. Skenandore*, 99 Wn. App. at 499.  Frederick Orr had no ability to harm Sasquatch.  Orr expended no force against the Bigfoot.  The metal pipe struck no muscle of the mean monster.  Orr inflicted no injury on the phantom menace.

The State relies on *State v. Kilponen*, 47 Wn. App. 912, 737 P.2d 1024 (1987) for the proposition that the burglary statute, RCW 9A.52.020(1), does not demand that the person, against whom the burglar intends to commit a crime, be present in the home at the time of the burglary.  The State accurately cites the decision for this rule.  Nevertheless, the *Kilponen* court applied the rule to the element of the crime of first degree burglary that requires proof of the intent to commit a crime against a person therein.  The court did not apply the rule to the element at issue in this appeal, that being whether the trespasser armed himself with a deadly weapon.  Gerald Kilponen entered his

16

estranged wife's home with a rifle, so he bore a per se deadly weapon.

Insufficient evidence wrongly convicted Frederick Orr of first degree burglary.

_____
Fearing, J.