[No. 25322-8-III. Division Three. January 29, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. TERRY LEE BROOKS, *Appellant*.

*Janet G. Gemberling* and *Julia A. Dooris* (of *Gemberling & Dooris, PS*), for appellant.

*Karl F. Sloan, Prosecuting Attorney,* and *Stephen M. Bozarth* and *Jennifer R. Richardson, Deputies,* for respondent.

¶1 SWEENEY, C.J. — This is an appeal from a conviction for second degree assault with a deadly weapon and a sentence requiring a mental health evaluation and treatment. We conclude that the court properly instructed the jury on the elements of second degree assault with a deadly weapon, but that the court improperly imposed a mental health evaluation and mental health treatment as a condition of community custody. We, therefore, affirm the conviction but reverse the mental health evaluation as a condition of the sentence.

## FACTS

¶2 Terry Brooks stood outside the Washington State Department of Corrections (DOC) building with a gun. He pointed the gun at the head of a community corrections officer, Jeanie Anderson, as she came outside of the building.

¶3 Ms. Anderson froze. She then slowly backed toward the door. She ran inside and warned her fellow colleagues. Another corrections officer told everyone to get down and dialed 911. Ms. Anderson later saw a bullet hole in her office window. The bullet hit the window right above the level of Ms. Anderson's computer. The police arrived and arrested Mr. Brooks. They found him in his car near the DOC building. Ms. Anderson later remembered that she had supervised Mr. Brooks in 1998.

¶4 The police found a Crossman .177 air pistol on the front seat of Mr. Brooks' car. They charged Mr. Brooks with second degree assault with a deadly weapon.

¶5 The State moved for a competency evaluation. The court conducted a hearing on Mr. Brooks' mental health status before trial. The judge found Mr. Brooks competent to stand trial after an evaluation and report from Eastern State Hospital.

¶6 The trial judge instructed the jury on the elements of second degree assault. The jury requested a definition on the term "unlawful force" for the second degree assault instruction while in deliberations. The judge responded that the term "unlawful force" did not apply in the present case because Mr. Brooks did not claim self-defense. The trial court also instructed on the definition of a "deadly weapon" as a device capable of causing "substantial bodily injury." Clerk's Papers (CP) at 39.

¶7 The jury convicted Mr. Brooks of second degree assault with a deadly weapon. The trial judge also ordered him to obtain a mental health evaluation and treatment, and to take prescribed medications, all as a condition of community custody.

## DISCUSSION

### SECOND DEGREE ASSAULT

¶8 Mr. Brooks contends the trial court relieved the State of its burden to prove second degree assault when it told the jury that the term "unlawful force" did not apply in this case. Mr. Brooks did not challenge the court's response at trial. He now argues, however, that he may raise the issue for the first time on appeal because the judge's instruction violated his constitutional right to due process of law.

¶9 The State responds that the phrase "with unlawful force" was not an essential element of the second degree assault crime. The phrase "unlawful force" is generally applicable in self-defense cases. And this case did not involve self-defense.

¶10 We review jury instructions de novo if the challenge is based upon a misstatement of the law. *State v. Walker*, 136 Wn.2d 767, 772, 966 P.2d 883 (1998).

 ¶11 The usual test for the sufficiency of a jury instruction is whether "it correctly states the law, is not misleading, and permits counsel to argue his theory of the case." *State v. Mark*, 94 Wn.2d 520, 526, 618 P.2d 73 (1980). A jury instruction not challenged either at trial or on appeal becomes the law of the case. *State v. Willis*, 153 Wn.2d 366, 374, 103 P.3d 1213 (2005). We will, however, consider a challenge raised for the first time on appeal when the challenge implicates a constitutional right. *State v. Strand*, 20 Wn. App. 768, 770-71, 582 P.2d 874 (1978) (citing *State v. Peterson*, 73 Wn.2d 303, 306, 438 P.2d 183 (1968)). "Error raised for the first time on appeal which alleges an invasion of a basic constitutional right will be reviewed to prevent an obvious and manifest injustice." *Id.*

 ¶12 Due process of law requires that the State prove all the facts necessary to support the elements of the charged crime. *State v. Redwine*, 72 Wn. App. 625, 629, 865 P.2d 552 (1994). Mr. Brooks argues that the State was relieved of its burden to prove every element by the judge's instruction. Mr. Brooks' challenge implicates a constitutional right, and so we must pass on it. RAP 2.5(a)(3); *Strand*, 20 Wn. App. at 770-71; *Redwine*, 72 Wn. App. at 629.

¶13 "Assault in the second degree" is assaulting another with a deadly weapon under circumstances that do not amount to assault in the first degree, RCW 9A.36.021(1)(c), or the intentional assault of another, "thereby recklessly inflict[ing] substantial bodily harm." RCW 9A.36.021(1)(a).

 ¶14 The State must prove facts necessary to support each element of the crime charged. *State v. Takacs*, 35 Wn. App. 914, 916, 671 P.2d 263 (1983). And the State has the burden to prove beyond a reasonable doubt the absence of a defense (such as self-defense) if (1) it is an element of the crime and (2) there is some evidence of the defense. *Id.* at 917. Here, Mr. Brooks neither alleged nor tried to show self-defense. And unlawful force would have been an element of the crime charged only if self-defense were an issue.

*Id.* at 916-17. The instruction did not, then, relieve the State of its burden to show the essential elements of the crime here. And the trial court's statement to the jury that unlawful force applied only when self-defense is presented was correct. *Id.* at 919; 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL, at 292 (2d ed. Supp. 2005).

DEADLY WEAPON INSTRUCTION

 ¶15 Mr. Brooks contends that the substitution of "substantial bodily harm" for "serious bodily injury" was in error. Mr. Brooks misstates the jury instructions. Appellant's Br. at 8. The jury instructions did not substitute "substantial bodily harm" for "serious bodily injury." CP at 39; Appellant's Br. at 8. The court did not use the phrase "serious bodily injury." The trial court instructed the jury that a "deadly weapon" is a device that is capable of causing "substantial bodily injury." CP at 39.

¶16 Whether the jury instruction adequately set out the elements of the crime charged is, again, a question of law, and so our review is de novo. *Walker*, 136 Wn.2d at 772; *State v. Winings*, 126 Wn. App. 75, 86, 107 P.3d 141 (2005).

¶17 A "deadly weapon" is "any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a 've-hicle' as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6).

¶18 The statute then sets out two categories of deadly weapons. *Winings*, 126 Wn. App. at 87. The first includes explosives or firearms. They are deemed deadly per se. *Id.*; *see State v. Carlson*, 65 Wn. App. 153, 158, 828 P.2d 30 (1992). The second category includes any other weapon or instrument that may be deadly in fact if it is "readily capable of causing death or substantial bodily harm" depending on "the circumstances in which it is used, attempted to be used, or threatened to be used." RCW

9A.04.110(6); *Winings*, 126 Wn. App. at 87; *see Carlson*, 65 Wn. App. at 158-59.

¶19 "Substantial bodily harm" is "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110(4)(b). In this case, the trial court instructed the jury that the definition of a deadly weapon was

> any weapon, device, instrument, substance or article, which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or *substantial bodily injury*.

CP at 39 (emphasis added).

¶20 The Court of Appeals in this state has concluded that the jury instruction used here is an adequate statement of the law. *Winings*, 126 Wn. App. 75; *State v. Barragan*, 102 Wn. App. 754, 9 P.3d 942 (2000). Division Two of this court concluded that the trial court properly instructed the jury on the meaning of a "deadly weapon" by instructing that a " '[d]eadly weapon means any weapon . . . which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or *substantial bodily injury*.' " *Winings*, 126 Wn. App. at 90-91 (some emphasis omitted) (alterations in original).

¶21 The jury instruction that a "deadly weapon" is a device capable of causing "substantial bodily injury" as opposed to "substantial bodily harm" was a legally adequate statement of the law. *Id.* at 87; *Barragan*, 102 Wn. App. at 760-61; RCW 9A.04.110(4)(b).

CONDITION OF COMMUNITY CUSTODY

¶22 Mr. Brooks cites to RCW 9.94A.505 and *State v. Jones*[1] to support his contention that the trial court did not

---

[1] *State v. Jones*, 118 Wn. App. 199, 76 P.3d 258 (2003).

have the authority to require a mental health evaluation as a part of his community custody. He also argues that the trial court exceeded its authority by ordering him to take prescribed medications.

¶23 The State responds that the trial court did not exceed its authority when it ordered these conditions of community custody because the court conducted a hearing on Mr. Brooks' mental health status before trial. The testimony of a therapist complied with RCW 9.94A.505(9)[2] and provided the court with a factual basis to order a mental health treatment evaluation.

¶24 We review a crime-related community custody condition for an abuse of discretion. *State v. Autrey*, 136 Wn. App. 460, 466-67, 150 P.3d 580 (2006); *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). A trial court abuses its discretion when its decision is based on untenable grounds, including those that are contrary to law. *In re Marriage of Bralley*, 70 Wn. App. 646, 651, 855 P.2d 1174 (1993); *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

¶25 A trial court may generally impose crime-related prohibitions or affirmative conditions. RCW 9.94A.505(8); *Autrey*, 136 Wn. App. at 466.

¶26 The question here is whether the trial court exceeded its authority when it ordered a mental health evaluation and treatment as a condition of community custody. A trial court may order an offender to " 'participate in crime-related treatment or counseling services' " when imposing community custody. *Jones,* 118 Wn. App. at 208-09 (emphasis omitted) (quoting LAWS OF 1988, ch. 153, § 2);

---

[2] "The court may order an offender whose sentence includes community placement or community supervision to undergo a mental status evaluation and to participate in available outpatient mental health treatment, if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025, and that this condition is likely to have influenced the offense. An order requiring mental status evaluation or treatment must be based on a presentence report and, if applicable, mental status evaluations that have been filed with the court to determine the offender's competency or eligibility for a defense of insanity. The court may order additional evaluations at a later date if deemed appropriate." RCW 9.94A.505(9).

RCW 9.94A.700(5)(c). A trial court may order an offender to undergo mental health evaluation and treatment as a condition of community custody if it complies with certain procedures. RCW 9.94A.700(5)(c), .505(9); *Jones*, 118 Wn. App. at 208-09.

¶27 First, the court must find "that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025." RCW 9.94A.505(9); *Jones*, 118 Wn. App. at 208-11. Second, this mental health condition was "likely to have influenced the offense." RCW 9.94A-.505(9); *Jones*, 118 Wn. App. at 208-11.

¶28 An "order requiring mental status evaluation or treatment must be based on a presentence report and, if applicable, mental status evaluations that have been filed with the court to determine the offender's competency or eligibility for a defense of insanity. The court may order additional evaluations at a later date if deemed appropriate." RCW 9.94A.505(9); *Jones*, 118 Wn. App. at 208-09.

¶29 In *Jones*, the court held that mental health treatment and counseling reasonably relates to a person's risk of reoffending and is legally valid only if the court obtains a "presentence report or mental status evaluation and finds that the offender was a mentally ill person whose condition influenced the offense." *Jones*, 118 Wn. App. at 210.

¶30 Here, the State filed a motion for a competency evaluation. The trial court found that Mr. Brooks was competent to stand trial. But there was no finding that Mr. Brooks was a mentally ill person whose condition influenced the offense as required under RCW 9.94A.505(9). *Id.*

¶31 And to order mental health evaluation and treatment under RCW 9.94A.505(9) and RCW 9.94A.700(5)(c), the trial court must find that reasonable grounds exist that the person is mentally ill and the condition most likely influenced the offense. RCW 9.94A.505(9); *Jones*, 118 Wn. App. at 208-11. That did not occur here. The sentencing court did not have the authority to impose mental health

evaluation and treatment. *Jones*, 118 Wn. App. at 208-11; RCW 9.94A.505(9), .700(5)(c).

¶32 We affirm the conviction for second degree assault with a deadly weapon. But we reverse the community custody condition regarding mental health evaluation and treatment.

SCHULTHEIS and KULIK, JJ., concur.