# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58463-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JERRY LEE MICHEAU, | |
| Appellant. | |

CHE, J. — Jerry Lee Micheau appeals his convictions and sentence for two counts of first degree child molestation.

Micheau, a family friend and "uncle" to the children, sexually assaulted LG and GG when they were in elementary school. Several years later, LG and GG disclosed the sexual assaults to their mother and her girlfriend.

In motions in limine, the prosecutor agreed he would elicit disclosure testimony identifying Micheau only from LG, GG, and two professional witnesses. But during trial, after LG and GG testified, the prosecutor sought testimony through the sisters' mother and their mother's girlfriend about the disclosures, including that LG and GG identified Micheau as the person who touched them. Relevant to this appeal, their mother and her girlfriend collectively mentioned LG and GG's identification of Micheau four times. While the trial court sustained Micheau's objection to the girlfriend's first mention of LG's identification of Micheau, the trial court overruled the second objection under the "excited utterances" exception to hearsay.

Micheau did not raise additional objections to the mother's or her girlfriend's subsequent testimony regarding the girls' disclosure to them, which Micheau now challenges on appeal.

During closing arguments, the prosecutor discussed the definition of sexual contact and stated that, if the jury found LG and GG's testimony credible regarding the context of the disclosures, "then there is no reasonable doubt," among other statements. The jury found Micheau guilty of two counts of first degree child molestation. At sentencing, the trial court found Micheau indigent but ordered him to pay community custody supervision fees. The trial court also ordered Micheau to obtain a mental health assessment and treatment.

Micheau appeals arguing that (1) reversal is required because the trial court erroneously admitted statements under the excited utterances hearsay exception, (2) his counsel provided ineffective assistance by failing to object to some of the testimony following the "excited utterance," (3) the prosecutor committed misconduct by misleading the trial court regarding testimony to be elicited about the disclosures to the mother and girlfriend, (4) during closing argument, the prosecutor misstated and minimized the State's burden of proof and misstated the law and facts, and Micheau's counsel provided ineffective assistance by failing to object such statements, and (5) cumulative error compels a new trial. Further, Micheau argues the conditions requiring payment of community custody supervision fees and ordering Micheau to undergo mental health evaluation and treatment should be stricken.

We hold that (1) while evidentiary error occurred related to one of the challenged identification instances, such error was harmless and Micheau failed to preserve for review any challenge related to the other instances, (2) Micheau fails to show ineffective assistance of counsel related to the challenged testimonies, (3) Micheau fails to show that the prosecutor's

actions related to the identification testimonies amounted to misconduct, (4) Micheau fails to show that the prosecutor's statements in closing arguments were misconduct and, thus, fails to show ineffective assistance of counsel too, and (5) the cumulative error doctrine does not apply. We also hold that the condition requiring community custody supervision fees be stricken and the mental health evaluation and treatment condition should be stricken unless the trial court makes the requisite findings.

Accordingly, we affirm Micheau's convictions but remand for the trial court to strike the community custody supervision fees and consider whether to order the mental health evaluation and treatment condition according to statutory requirements.

FACTS

*Background*

High-schoolers LG and GG knew Micheau[1] for most of their lives as a family friend and "uncle." 5 Rep. of Proc. (Mar. 1, 2023) (5 RP) at 412. When LG and GG were of elementary school age, they experienced homelessness along with their younger brother, mother—Stacy Bleuel, and their mother's girlfriend—Trina Climer. During this time, the family would occasionally stay at Micheau's one-bedroom apartment.

When LG was between seven and nine years old, Micheau touched LG in a way that made her scared and uncomfortable. LG and Micheau were alone in Micheau's apartment, sleeping in his bed, when LG woke up to Micheau grabbing and squeezing her vagina over her clothes.

---

[1] Micheau was born in 1970. Ex. 1. Neither LG nor GG were married to Micheau.

Micheau also inappropriately touched GG when she was between eight and ten years old. GG awoke from sleep to find Micheau rubbing her stomach. She then felt his fingers approach the waistband of her clothes and rub his hand back and forth a "couple of times" over her stomach and pants. 5 RP at 424. Micheau's fingers went underneath the waist of her pants, which were sitting below her belly button on her hips, and "brushed his fingers just beneath the pant line." 5 RP at 427. GG felt "frozen" and did not know what to do so she turned onto her side and went back to sleep. 5 RP at 422.

Several years later, LG and GG skipped school and had their phones taken away. LG began crying in front of Bleuel who "could tell [LGs crying] wasn't about the phone." 5 RP at 506. When Bleuel asked LG what was going on, LG said she had been touched by Micheau. 5 RP at 506-07. When Climer came home, GG confirmed to Climer that Micheau also touched her. Both LG and GG later met with Keri Arnold, a child forensic interviewer, and Sergeant Kelly Custis. LG and GG and disclosed to them in forensic interviews that Micheau had sexually assaulted them.

*Procedural Facts*

The State charged Micheau by amended information with two counts of first degree child molestation occurring between January 1, 2013, and November 20, 2018. CP at 6-7, 106-07.

Both Micheau and the State filed motions in limine. CP at 38-49, 56-57. In the State's motion, it asked the trial court to admit LG and GG's disclosures and described the anticipated testimony as including LG and GG's disclosures to Bleuel and Climer. Micheau moved for any hearsay evidence to be excluded and argued specifically that any testimony regarding the disclosures should be limited to the fact that the disclosures of sexual assault occurred.

4

No. 58463-8-II

On February 23, 2023, the court heard argument on the motions in limine. Related to the anticipated identification testimony, the trial court asked the prosecutor whether the only statement of identity was in the forensic interview, and the State responded:

> That's really the only one that I would be going into. I mean, in regards to kind of how -- how there was a statement of identity with [Bleuel], I think that's debatable if [Bleuel] raises it, but then child says, yeah, this was the person, whether that is a statement of identification or not, either way, I'm not really planning on admitting it through them anyway.

1 RP (Feb. 23, 2023) at 32-33.

The court issued an order on February 27, granting the defense's motion to limit the identification testimony "subject to judicial review of caselaw. State may ask, 'Did [alleged victim] make a disclosure of sexual assault?' State may not ask witnesses other than LG and GG about the identity of the [alleged] perpetrator." Clerk's Papers (CP) at 84 (alterations in original). Also on February 27, the court revisited the State's motion addressing disclosure testimony. After performing additional research on the topic and upon considering the "four disclosures that the State is seeking and whether identification comes in," the trial court determined that a statement of identification was admissible under ER 801(d)(1)(iii) and granted the State's request to admit identification disclosure statements from the forensic interviews.[2]

2 RP (Feb. 27, 2023) (2 RP) at 131, 134-135; CP at 95-96.

The following exchange then occurred:

> [TRIAL COURT]: Any issue with only asking that of the two -- regarding the two –

---

[2] ER 801(d)(1)(iii) provides that a statement is not "hearsay" if the declarant testified at trial, the declarant is subject to cross examination concerning the statement, and the statement is "one of identification of a person made after perceiving the person."

5

> [PROSECUTOR]: Yeah.
>
> [TRIAL COURT]: -- disclosures that actually identify him?
>
> [PROSECUTOR]: Yeah. It would be asked to Sergeant Custis and [] Arnold.
>
> [TRIAL COURT]: Okay.
>
> [PROSECUTOR]: But not the other two adults.

2 RP at 135. In a second order dated February 28, the trial court granted the State's motion to admit LG and GG's statements identifying Micheau to others in their forensic interviews and Micheau agreed that the State could inquire of Arnold and Sgt. Custis as to who LG and GG identified in their forensic interviews.

*Trial*

Witnesses testified consistently with the facts above. Additionally, LG, GG, Climer, and Bleuel each testified regarding LG and GG's disclosures to Climer and Bleuel.[3]

LG testified that, a year prior to trial, she told Bleuel that someone had touched her. LG told Bleuel that "[Micheau] had touched me. I said that something had happened with [Micheau]." 5 RP at 397. GG then testified that, once LG told Climer, she disclosed to Climer that Micheau had touched her too.

Climer testified that, on the date of the disclosures, she arrived home and saw Bleuel and LG crying. Climer later testified, "then I asked them what was the matter, and [LG] said, '[Micheau].'" 5 RP at 472. Micheau's counsel raised a hearsay objection, and the trial court sustained the objection.

---

[3] LG testified first, then GG, Climer, and Bleuel testified respectively.

Climer testified that both Bleuel and LG were crying and that LG "couldn't even talk. She was crying . . . so bad." 5 RP at 472. The prosecutor then asked Climer what LG said, and Climer stated, "All she said was, '[Micheau].'" 5 RP at 472. Micheau's counsel again objected on the basis of hearsay. This time, the trial court overruled the objection after the prosecutor asserted that he laid foundation for excited utterance.

Climer then repeated that "[LG] said [Micheau] had touched her," and testified that, when she went to speak with GG, Climer asked her "if [Micheau] had ever touched her inappropriately." 5 RP at 473. Micheau's counsel did not object to either statement.

When Bleuel testified next, she described finding LG crying and, upon asking LG what was going on, LG told Bleuel that somebody touched her. Bleuel then stated, "I said, 'By who? [Micheau]?'" 5 RP at 506-07. Micheau's counsel did not object. Bleuel then testified that, after Climer came in and saw Bleuel and LG crying, Climer asked "What's the matter?" and LG "just looked up and said, '[Micheau].'" 5 RP at 507. Micheau's counsel did not object.

During the State's closing arguments, the following statements occurred:

[PROSECUTOR]: So what that leaves is whether or not there was sexual contact between [] Micheau and [GG] and [LG]. So sexual contact is separately defined within your Jury Instructions. And it says that it's "Any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party."

[argument regarding "any touching"] . . . .

Next part, sexual or other intimate parts. Now, this is not defined within your Jury Instructions. So think about common sense and experience, what do these things mean to you? . . . What are the intimate parts of the human body? And we talked about people might have individual sensitivities and things like that. And G.[G.] certainly said that she was uncomfortable when this touching occurred. But largely, it's areas covered by clothing.

7

Her testimony was he was underneath her clothing.  He was rubbing along the waist.  His fingers were going underneath the pant line, below the belly button.  If you think about a female wearing a bikini swimsuit, this is going underneath the bikini bottom.

[MICHEAU]:            Objection.

[THE COURT]:        Overruled.

[PROSECUTOR]:     All right.

So that's an intimate part.

Next part, gratifying sexual desires.  Think about [GG's] description.  She said he was touching and rubbing back and forth.  It was repeated.  Fingers underneath the pant line.  What was the context?  The context as it was at night, no one else was around, it was in Mr. Micheau's bed, they were cuddling.

What other reason would Mr. Micheau have to touch [GG], in this way, in this context, other than it being sexual?  Other than it being done to gratify his sexual desire?  I submit to you that all of the elements of Count I have been proven beyond a reasonable doubt.

7 RP (Mar. 6, 2023) (7 RP) at 628-30.

Regarding LG, the prosecutor then described how "she woke up to [] Micheau with his hands grabbing and squeezing her vagina . . . it happens at night, no one else is around, it's in the bed, it's preceded and followed by cuddling.  What other reason would he have to touch [LGs] vagina in this way, except for it being sexual?  It's done for the purposes of gratifying sexual desire."  7 RP at 630-31.

Micheau's counsel began closing arguments by stating, "[t]he girls didn't offer disclosure, they took another swing at getting their phones back.  [LG] was taking another swing at getting her phone back and [GG] backs her up.  That's what we have here."  7 RP at 636-37.

During rebuttal, the prosecutor then stated:

8

I want to talk about this question that's sort of been interwoven throughout the course of trial. Did [LG] and [GG] disclose to their mom because they were telling the truth about what really happened to them, or were they disclosing to their mom something false to try to get their cell phones back? The question is whether this is reasonable doubt. And I submit to you it absolutely is not for numerous reasons, and let's go through some of those.

So think about their testimony, right? [LG] and [GG] were asked this question on the stand. You know, "What is the ultimate purpose of you telling your mom? Was it because you were trying to tell the truth or were you trying to make something up to get your phone." They said, we were being truthful; we were telling the truth.

If you find their testimony credible on this point, then there is no reasonable doubt.

[MICHEAU]:     Objection, misstates the burden and …

[THE COURT]:     Overruled. But I will advise the jury to read their instructions and decide this case based on the instructions that were given to you. Also, I'll remind you that the attorneys' comments are argument only and not evidence or the law.

Go ahead, [State].

[PROSECUTOR]:     So there would be no reasonable doubt on this point. All right?

So let's think about [Bleuel's] testimony. She testified that before [LG] disclosed, there was a moment where she broke down, she was shaking, she became very emotional. She knew as a mother – she had seen [LG] cry before – and she knew something was wrong. Something was really wrong. It wasn't about the cell phones anymore. If you find [Bleuel's] testimony credible on this point, then there's no reasonable doubt as to this phone theory.

7 RP at 650-51.

The jury found Micheau guilty of two counts of first degree child molestation.[4] CP at

130-31.

---

[4] Under the former applicable statute, a person was guilty of first degree child molestation if they had, or knowingly caused another person under the age of eighteen to have, sexual contact with

9

In a pre-sentence investigation ("PSI") completed by the Department of Corrections ("DOC"), the DOC identified both sexual deviancy and mental health issues requiring attention to reduce Micheau's re-offense risk. CP at 148. The DOC recommended that Micheau should obtain a psychosexual evaluation as well as a mental health assessment and follow all treatment recommendations. CP at 149.

At sentencing, the trial court found Micheau indigent as defined in RCW 10.101.010(3)(a)-(d) and waived certain legal financial obligations due to indigency. The trial court sentenced Micheau to an indeterminate sentence of 67 months to life, with both counts running concurrently. The trial court also imposed various conditions including psychosexual evaluation and several other conditions in an Appendix H. CP at 186. In Appendix H, the trial court ordered Micheau to "[o]btain mental health treatment assessment, and follow through with all recommendations of the provider, including taking medications as prescribed." CP at 195. The trial court also ordered him to "[p]ay supervision fees as determined by the [DOC]." CP at 194.

Micheau appeals.

## ANALYSIS

### I. IDENTIFICATION TESTIMONY

Micheau brings evidentiary challenges, a claim of ineffective assistance of counsel, and a claim of prosecutorial misconduct relating to four instances where Climer and Bleuel testified that LG and GG identified Micheau as the person who touched them.

---

someone who was less than twelve years old and they were at least thirty-six months older than the victim. Former RCW 9A.44.083(1).

A.      *The Four Hearsay Instances Micheau Challenges*

Because Micheau's challenges relate to four instances in Climer and Bleuel's testimonies and our analysis below depends on the instance at issue, we first define the four challenged instances.

The first three instances occurred during Climer's testimony when describing her walking into the home after LG disclosed the sexual assault to Bleuel:

[CLIMER]:              I walked in and [LG and Bleuel] were both crying.

. . . .

[CLIMER]:              [LG] was crying, like, so bad.

[PROSECUTOR]:    Okay.  What did she say?

[CLIMER]:              All she said was, "**[Micheau].**"  And then --

[Micheau objects based on hearsay and the trial court overrules the objection under the excited utterances exception.  Then Climer asks the prosecutor to repeat his question as she forgot where she was.] . . . .

[PROSECUTOR]:     So during this time period, you're coming home.  You see that LG is crying.  What did she say?

[CLIMER]:              She said **[Micheau]** had touched her. . .

. . . .

[CLIMER]:              I went upstairs after [talking with Bleuel about LG's disclosure] and talked to GG and asked her if **[Micheau]** had ever touched her inappropriately, because we just found out from LG that he had been touching her.

. . . .

[PROSECUTOR]        Did she confirm that she also was touched?

[CLIMER]:              She did, but she didn't tell me what he did.

5 RP at 472-473 (emphasis added to show the first, second, and third challenged instances, respectively).

The fourth instance occurred during Bleuel's testimony regarding the same events:

> [BLEUEL]:     [LG] said that she had been touched by somebody . . . I said, "By who?  **[Micheau]?**"  Because - - and she said, "Yeah," . . .

5 RP at 506-07 (emphasis added).

B.      *Hearsay*

Micheau first argues that the trial court abused its discretion in admitting all four instances as they constituted hearsay and did not meet the excited utterances hearsay exception.

i.      *Legal Principles*

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *State v. Otton*, 185 Wn.2d 673, 678, 374 P.3d 1108 (2016).  An abuse of discretion occurs when the trial court either adopts a view that no reasonable person would take, bases its decision on facts unsupported in the record, or applies an incorrect legal standard in making its determination.  *State v. Sisouvanh*, 175 Wn.2d 607, 623, 290 P.3d 942 (2012).  If a trial court abuses its discretion, we then review the error for prejudice to determine whether it was reasonably probable, absent the error, that the outcome of the trial would have been materially affected.  *State v. Barry*, 183 Wn.2d 297, 303, 352 P.3d 161 (2015).

An out-of-court statement offered into evidence to prove the truth of the matter asserted, otherwise known as "hearsay," is inadmissible unless an exception applies.  ER 801(c); ER 802. One recognized exception exists when a statement is an "excited utterance," "relating to a startling event or condition made while the declarant was under the stress of excitement caused

by the event or condition." ER 803(a)(2); *State v. Carte*, 27 Wn. App. 2d 861, 883, 534 P.3d 378 (2023).

A party seeking to admit a statement under the excited utterance exception must show (1) the occurrence of a startling event or condition, (2) the declarant made the statement under the stress of excitement of the startling event or condition, and (3) the statement related to the starting event or condition. *Id.* "The crucial question with regard to excited utterances is whether the statement was made while the declarant was still under the influence of the event to the extent that his statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment." *Id.* at 885 (quoting *State v. Sellers*, 39 Wn. App. 799, 804, 695 P.2d 1014 (1985)).

ii.       *The Trial Court Erred in Admitting the First Instance Under the Excited Utterances Exception; However, Any Error Was Harmless*

Micheau argues that the trial court abused its discretion when it admitted as an excited utterance the first instance where Climer testified that LG identified Micheau. The State concedes that the trial court abused its discretion in admitting this portion of Climer's testimony, but argues that the error was nevertheless harmless. We accept the State's concession regarding Climer's testimony in this instance and agree with the State that the trial court's error related to this instance was not prejudicial.

In *State v. Ramirez-Estevez*, this court held disclosures of rapes made two to three years after they occurred did not qualify as excited utterances because of the prolonged delay between

the traumatic events and the recount of them.[5] 164 Wn. App. 284, 292, 263 P.3d 1257 (2011), *review denied*, 173 Wn.2d 1030 (2012). In doing so, we acknowledged that an excited utterance's startling event or condition does not need to be the "principal act" underlying the case, the passage of time alone is not dispositive to whether a statement qualifies, and subsequent startling events may recreate the stress from an original trauma and cause spontaneous exclamation. *Id.* at 291-92. However, we also explained how "at this much later point, the reliability of an excited utterance close in time to the underlying traumatic event is no longer a predominant reliability factor, and there has been considerable time for other factors to have intervened." *Id.* at 292.

Here, it is uncontroverted that recalling the sexual assault was highly upsetting and distressing to LG. However, the four-or-more year separation between the traumatic event and LG's disclosure to Climer raises the same reliability concerns at the center of our decision in *Ramirez-Estevez*. Because of this great delay, we accept the State's concession that LG's statement to Climer regarding the sexual assault did not constitute one made under the stress of the startling event and, thus, did not qualify under this hearsay exception. *See Id.*

Next, we consider whether it was reasonably probable, absent the error, that the outcome of the trial would have been materially affected. *See Barry*, 183 Wn.2d at 303. The "'[a]dmission of testimony that is otherwise excludable is not prejudicial error where similar testimony was admitted earlier without objection.'" *Ramirez-Estevez*, 164 Wn. App. at 293 (quoting *Ashley v. Hall*, 138 Wn.2d 151, 159, 978 P.2d 1055 (1999)).

---

[5] Ultimately, we held that, while the statements were inadmissible hearsay, their admission was harmless error. *Ramirez-Estevez*, 164 Wn. App. at 294.

Here, Micheau fails to show that, absent the error in admitting Climer's statements in this first instance, the outcome of Micheau's trial would have been materially affected. Before Climer testified, LG had already testified that Micheau inappropriately touched her and specifically identified him as the perpetrator. LG testified that she disclosed to her mother that Micheau had touched her and Micheau had a chance to cross examine her about this identification. Later in trial, Sergeant Custis and Arnold testified, without objection, that LG disclosed to them that Micheau had sexually assaulted her. Given the admission of LG's prior testimony, disclosing that she had told her mother it was Micheau who touched her inappropriately, coupled with Sergeant Custis and Arnold's subsequent testimony, the error regarding admitting Climer's statement was harmless. *See id.*

We hold that, while the trial court abused its discretion in admitting Climer's statement under the excited utterances hearsay exception, such error was harmless given LG's own testimony and the evidence presented.

iii.     *Micheau Fails to Preserve Evidentiary Error Related to the Other Three Instances*

Micheau additionally argues that the trial court abused its discretion by admitting additional testimony by Climer and by Bleuel under the "excited utterances" exception to hearsay despite Micheau not making specific objection to these other three instances. *See* Br. of Appellant at 42-44, 49. The State contends that Micheau failed to preserve for review any such error when Micheau did not object at trial. We agree with the State that Micheau failed to preserve for review any evidentiary errors related to these other portions of testimony and, thus, decline to consider the merits of Micheau's arguments.

We may refuse to review a claim of error not raised in the trial court. RAP 2.5(a). To provide the trial court with an "opportunity to prevent or cure error," a party may assign an evidentiary error on appeal based only on a specific ground made below. *State v. Kirkman*, 159 Wn.2d 918, 926, 115 P.3d 125 (2007).

For these other three instances in Climer and Bleuel's testimonies that Micheau challenges, Micheau did not object. Thus, Micheau failed to preserve for appellate review the issue whether the trial court abused its discretion in admitting any of these portions of testimony. *See id.*

Micheau asserts that we should nevertheless address the merits of his claims by contending that "[a]ppellate review is not precluded if it would be a useless endeavor to object as the court had already overruled an earlier objection on the same grounds." Br. of Appellant at 43. As support for this assertion, Micheau cites to *State v. Cantabrana*, 83 Wn. App. 204, 921 P.2d 572 (1996). However, this case is inapposite. At issue in *Cantabrana* were two jury instructions that failed to inform the jury of the relevant legal standard. *Id.* at 208. Despite Cantabrana only objecting to one of the jury instructions at the trial court, we rejected both and remanded for a new trial because both instructions suffered from the same defect. *Id.* at 208-09. In doing so, we stated that Cantabrana's "objection should have alerted the judge to the defect in both instructions." *Id.* And our rules provide an exception for manifest constitutional errors. *See* RAP 2.5(a)(3); *see also State v. O'Hara*, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009) (unpreserved claims of error involving jury instructions can qualify as manifest constitutional errors). Notably, Micheau makes no such argument that an exception applies here. And even if

16

we assume without deciding that error occurred regarding these three instances, any error was harmless for the same reasons discussed above in the first instance.

Because Micheau failed to preserve for review the other three instances of challenged testimony, we decline to consider the merits of these additional issues.

C.      *Ineffective Assistance of Counsel*

Alternatively, Micheau argues that his counsel was ineffective in failing to object to instances two through four described above. We disagree that Micheau's counsel was constitutionally ineffective because Micheau fails to show prejudice related to these instances.

Both the Sixth Amendment to the United State Constitution and article 1, section 22 of the Washington Constitution guarantee defendants effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). However, we give "great deference to trial counsel's performance and begin[] the analysis with a strong presumption that counsel was effective." *State v. Crow*, 8 Wn. App. 2d 480, 507, 438 P.3d 541 (2019).

To demonstrate that counsel's performance was constitutionally ineffective, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). A defendant demonstrates deficient performance by showing that counsel's performance "fell below an objective standard of reasonableness based on consideration of all the circumstances." *Crow*, 8 Wn. App. 2d at 507.

A defendant demonstrates prejudice by showing that "'there is a reasonable probability, that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Bertrand*, 3 Wn.3d at 129 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177

(2009)). This "'reasonable probability' standard is 'lower than a preponderance standard'" but requires a defendant to affirmatively show prejudice amounting to more than just a "conceivable effect on the outcome." *Id.* (quoting *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017)). Such prejudice exists if there is "'a probability sufficient to undermine [our] confidence in the outcome.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Because a defendant must establish both deficient performance and prejudicial effect, our inquiry ends if the defendant fails to show either deficient performance or prejudice. *State v. Case*, 13 Wn. App. 2d 657, 673, 466 P.3d 799 (2020); *see also Bertrand*, 3 Wn.3d at 128.

Micheau argues that his counsel performed deficiently by failing to object to Climer's second and third statements regarding LG identifying Micheau and Bleuel's similar statement. However, Micheau fails to demonstrate that, but for his counsel not objecting to the challenged statements, there is a reasonable probability that the outcome of the trial would have been different. *See Bertrand*, 3 Wn.3d at 129.

By the time Climer and Bleuel made the challenged statements, both LG and GG had already testified that Micheau had inappropriately touched them. LG and GG also testified to disclosing such, including identifying Micheau as being the perpetrator, to Climer and Bleuel and Micheau had a chance to cross examine LG and GG about these disclosures. Further, after Climer and Bleuel testified, Sergeant Custis and Arnold stated, without objection, that both LG and GG disclosed to them that Micheau had sexually assaulted them.

Therefore, even if Micheau's counsel performed deficiently in failing to object to Climer and Bleuel's statements that LG and GG had identified Micheau as the person who touched

them, our confidence in the outcome is not undermined by any possible error here. *See id*.

While Climer and Bleuel's statements could have affected the weight of LG and GG's testimony,

we are not persuaded that there is a reasonable probability that a reasonable jury would not have

still found Micheau guilty considering that both LG and GG already testified about their

disclosures to Climer and Bleuel and Micheau's identity was not central to the defense's theory

at trial.

Because Micheau fails to show that, but for his counsel's failure to object to these

instances, there is a reasonable probability that the outcome of his trial would have been

different, Micheau fails to show prejudice and, thus, we hold that his claim fails. *Case*, 13 Wn.

App. 2d at 673.

D.      *Prosecutorial Misconduct*

Micheau argues that the prosecutor engaged in serious, flagrant and ill-intentioned

misconduct by not moving to admit the identifications prior to trial, failing to mention "excited

utterances" prior to trial, and repeatedly assuring the trial court and Micheau that he was not

going to elicit the identifications through Climer and Bleuel. Br. of Appellant at 49-50. We

disagree.

To prevail on a claim of prosecutorial misconduct, "'the defendant bears the burden of

proving that the prosecutor's conduct was both improper and prejudicial.'" *State v. Gouley*, 19

Wn. App. 2d 185, 200, 494 P.3d 458 (2021) (quoting *State v. Emery*, 174 Wn.2d 741, 756, 278

P.3d 653 (2012)); *see also State v. Mak*, 105 Wn.2d 692, 726, 718 P.2d 407, *cert. denied*, 479

U.S. 995 (1986). We consider the challenge conduct "'in the context of the whole argument, the

issues of the case, the evidence addressed in argument, and the instructions given to the jury.'"

*Gouley*, 19 Wn. App. 2d at 200 (quoting *State v. Scherf*, 192 Wn.2d 350, 394, 429 P.3d 776 (2018)).

We employ one of two tests to determine whether reversal is required due to prosecutorial misconduct. *Id.* If the defendant objected to the prosecutor's remarks, the defendant must show that (1) the remarks were improper, and (2) there is a substantial likelihood the misconduct affected the verdict. *Id.* If the defendant did not object below—as occurred here—the defendant waives the prosecutorial misconduct claim unless they can show "(1) that comments were improper, (2) that the prosecutor's comments were both flagrant and ill-intentioned, (3) that the effect of the improper comments could not have been obviated by a curative instruction, and (4) a substantial likelihood the misconduct affected the verdict." *Id.* at 201.

In considering whether the defendant has overcome waiver when they did not object, we "'focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured.'" *Id.* (quoting *Emery*, 174 Wn.2d at 762). If the defendant fails to show that any improper remarks were incurable, their claim "'necessarily fails, and our analysis need go no further.'" *Id.* (quoting *Emery*, 174 Wn.2d at 762).

Here, before trial, the prosecutor represented to the trial court that they were not planning on admitting LG and GG's identification of Micheau through Climer and Bleuel nor asking them about LG and GG's disclosures. Nevertheless, during the State's direct examination of Climer and Bleuel, both testified to LG and GG disclosing that they had been touched inappropriately by Micheau.

20

However, even if the prosecutor's comments and conduct were improper, flagrant and ill-intentioned, the effect of any improper comments could have been obviated by a curative instruction and Micheau cannot show a substantial likelihood any misconduct affected the verdict. An instruction to disregard Climer and Bleuel's identification testimony would have cured any prejudice from their testimony. Micheau makes no persuasive showing that a curative instruction could not have obviated any prejudicial effect on the jury.[6] *Id*. And, as discussed above, we are not even persuaded that there is a reasonable probability, much less a substantial one, that the contested testimony impacted the outcome of Micheau's case. The contested testimony by Bleuel and Climer essentially repeated LG and GG's previously testimonies which were not objected to: telling the jury about their disclosures to their mother and her girlfriend and identifying Micheau. Micheau had an opportunity to cross examine LG and GG about these disclosures.

We hold that, because Micheau fails to meet his burden of showing how such actions amounted to flagrant and ill-intentioned misconduct, his claim fails.

## II. CLOSING ARGUMENTS

Micheau argues that the prosecutor committed reversible misconduct (1) by misstating and minimizing the State's burden of proof and (2) misstating the law and facts related to the element of "sexual contact." Br. of Appellant at 1.

---

[6] Micheau alternatively argues that "[i]f [we] find[] that the serious prejudice caused by the prosecutor's misconduct could have been cured, [we] should find that counsel's failure to expend that effort" amounted to ineffective assistance of counsel. Br. of Appellant at 56. However, for the same reasons that we hold that Micheau's ineffective assistance of counsel claim above fails, Micheau's claim here also fails because Micheau fails to show that, but for his counsel's failure to object to the same challenged testimony, there is a reasonable probability that the outcome would have been different. *Bertrand*, 3 Wn.3d at 129.

A.      *The Prosecutor Did Not Impermissibly Misstate the Burden of Proof or Presumption of Innocence*

Micheau argues that the prosecutor committed misconduct through misstating and minimizing the State's burden when he "declar[ed] that jurors would have 'no reasonable doubt' if they found LG and GG credible when they said they were telling the truth." Br. of Appellant at 20. We disagree.

In a criminal case, the State bears the burden of proving every element of the crime beyond a reasonable doubt. *State v. Restvedt*, 26 Wn. App. 2d 102, 127, 527 P.3d 171 (2023). Prosecutors enjoy "'wide latitude' in closing argument, but their argument must be based on the evidence and must not misstate the applicable law." *State v. Crossguns*, 199 Wn.2d 282, 296-97, 505 P.3d 529 (2022) (quoting *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 713, 286 P.3d 673 (2012). This wide latitude includes that ability "to argue reasonable inferences from the evidence" so long as they do not shift the burden of proof onto the defendant. *State v. Thorgerson*, 172 Wn.2d 438, 453, 172 P.3d 43 (2011). It is also improper for the prosecution to make arguments that misstate the State's burden. *Crossguns*, 199 Wn.2d at 297. Likewise, a prosecutor commits misconduct if they "ask the jury to decide who was telling the truth." *Id*.

"Any allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." *State v. Azevedo*, 31 Wn. App. 2d 70, 78, 547 P.3d 287 (2024) (quoting *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003)).

Micheau challenges an argument made by the State on rebuttal. For context, Micheau began his closing argument by proposing his theory that LG and GG's disclosure was "another swing at getting their phones back." 7 RP at 637.

During rebuttal, the prosecutor discussed "this question that's sort of been interwoven throughout the course of trial. Did [LG] and [GG] disclose to their mom because they were telling the truth about what really happened to them, or were they disclosing to their mom something false to try to get their cell phones back?" 7 RP at 650. The prosecutor described how the two teens testified that they "were being truthful; [they] were telling the truth" when asked if they disclosed the sexual assaults to tell the truth or make something up to get back their phones. 7 RP at 650.

The prosecutor then stated, "If you find their testimony credible on this point, then there is no reasonable doubt." 7 RP at 650. Micheau objected. The trial court overruled the objection and reminded the jury that the attorney comments were argument only, not evidence, and to decide the case based upon the jury instructions.

After Micheau objected, the prosecutor discussed Bleuel testifying that she knew something was wrong, beyond [LG] just wanting her cell phone back. The prosecutor repeated, in a more narrow way, "[I]f you find her testimony credible *on this point*, then there's no reasonable doubt as to *this phone theory*." 7 RP at 651 (emphasis added).

Considering Micheau's closing argument and the context surrounding the prosecutor's statement, the prosecutor did not impermissibly ask the jury to decide whether Micheau was guilty based on who was telling the truth. Instead, the prosecutor's use of "on this point" and later clarifying that his statements related to "this phone theory" infers that the prosecutor was

23

limiting their argument as a response to Micheau's attack on the witnesses' credibility and defense theory of the case.

Because Micheau fails to show that the prosecutor's statement constituted misconduct, we hold that his claim here fails.

B.      *The Prosecutor Did Not Misstate the Facts or Law*

Micheau argues that the prosecutor committed flagrant, ill-intentioned and prejudicial misconduct by repeatedly misstating the law and also misleading the jury regarding evidence in the case.  We disagree.

To convict Micheau of first degree child molestation, the State had to prove, beyond a reasonable doubt, that Micheau had, or knowingly caused another person under the age of 18 to have, "sexual contact" with a child under 12 years old, not married to Micheau, and that Micheau was at least 36 months older than the victim.  Former RCW 9A.44.083(1) (1994).  "Sexual contact" is defined by statute as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party."[7]  RCW 9A.44.010(13).

First, Micheau argues that the prosecutor misstated the law regarding the definition of an "intimate part" by "urg[ing] jurors to apply a far [broader] definition" and "to use their 'common sense' and personal sensitivities."  Br. of Appellant at 28-29.  Micheau also asserts that the

---

[7] The legislature has amended this statute two times since Micheau committed the crimes; however, the changes have not affected the language of this definition—they have only changed its placement.  *Compare* LAWS OF 2007, ch. 20, § 3, *with* LAWS OF 2020, ch. 312, § 707, and LAWS OF 2023, ch. 470, § 3007.  Thus, we cite to the current version.

prosecutor misstated crucial facts related to "intimate parts" and that the prosecutor improperly compared the facts to wearing a bikini. Br. of Appellant at 29-30.

Contact is "intimate," falling within the meaning of the statute, "'if the conduct is of such a nature that a person of common intelligence could fairly be expected to know that, under the circumstances, the parts touched were intimate and therefore the touching was improper.'" *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009) (quoting *State v. Jackson*, 145 Wn. App. 814, 819, 187 P.3d 321 (2008)). Whether an area apart from genitalia and breasts are "intimate" is a question for the jury. *Jackson*, 145 Wn. App. at 819.

During closing arguments, the prosecutor read the definition of "sexual contact" as provided in the jury instructions. 7 RP at 628. The prosecutor then stated:

> Next part, sexual or other intimate parts. Now, this is not defined within your Jury Instructions. So think about common sense and experience, what do these things mean to you? . . . What are the intimate parts of the human body? And we talked about people might have individual sensitivities and things like that. And G.[G.] certainly said that she was uncomfortable when this touching occurred. But largely, it's areas covered by clothing.
>
> Her testimony was [Micheau] was underneath her clothing. He was rubbing along the waist. His fingers were going underneath the pant line, below the belly button. If you think about a female wearing a bikini swimsuit, this is going underneath the bikini bottom.

7 RP at 628-30. Micheau objected and the trial court overruled the objection. RP at 630. The prosecutor then concluded, unobjected to, "So that's an intimate part." 7 RP at 630.

From the context of the prosecutor's statements, the prosecutor did not misstate the law but instead encouraged the jurors, as the triers of fact, to assess whether the areas LG and GG described as having been touched would put a person of common intelligence on notice that, under the circumstances, the parts touched were intimate. *See Harstad*, 153 Wn. App. at 21;

*Jackson*, 145 Wn. App. at 819. Additionally, the prosecutor's analogy to a bikini did not misstate the facts of the case beyond the prosecutor's wide latitude to make reasonable inferences based on the case's facts. *See Thorgerson*, 172 Wn.2d at 453. The prosecutor's recital of GG's testimony mirrors those presented at trial.[8] Micheau fails to show misconduct.[9]

Micheau also argues that the prosecutor misstated the law by arguing that the State had not met its burden in proving "sexual gratification." Br. of Appellant at 31-32.

During closing, the prosecutor also discussed "gratifying sexual desires." 7 RP at 630. First, the prosecutor described how [GG] "said he was touching and rubbing back and forth. It was repeated. Fingers underneath the pant line . . . it was at night, no one else was around, it was in [] Micheau's bed, they were cuddling." 7 RP at 630. The prosecutor then stated, "What other reason would [] Micheau have to touch [GG], in this way, in this context, other than it being sexual? Other than it being done to gratify his sexual desire?" 7 RP at 630.

---

[8] Micheau contends that analogizing to a bikini misrepresented any evidence presented at trial because a bikini is "by definition very, very small, often barely covering the vaginal area with a small triangle." Br. of Appellant at 30. However, this characteristic of what a bikini is fails to acknowledge the fact that bikinis come in all shapes and sizes and other definitions reflect a much broader definition of what such a suit can include. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 215 (2002) ("a women's abbreviated two-piece bathing suit.").

[9] As an alternative argument to his claim that the prosecutor committed misconduct here, Micheau argues that he was denied ineffective assistance of counsel due to his attorney's failure to object to the prosecutor's statements. However, because the prosecutor's statements did not amount to misconduct, Micheau fails to show how any objection by his attorney to them would have been sustained and, thus, Micheau's alternative claim of ineffective assistance of counsel here fails. *See State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021) ("If a defendant centers their claim of ineffective assistance of counsel on their attorney's failure to object, then 'the defendant must show that the objection would likely have succeeded.'") (quoting *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541, *review denied*, 193 Wn.2d 1038 (2019).

Regarding LG, the prosecutor then described how "her testimony was she woke up to [] Micheau with his hands grabbing and squeezing her vagina . . . it happens at night, no one else is around, it's in the bed, it's preceded and followed by cuddling." 7 RP at 631. The prosecutor then stated, "What other reason would he have to touch [LG's] vagina in this way, except for it being sexual?" 7 RP at 631.

Contrary to Micheau's characterization, the prosecutor's statements here were not misconduct but reasonable arguments made based on the evidence presented at trial. The rhetorical questions were posed after describing facts presented through the testimony of LG and GG and the argument overall respected the jury's role of determining the State met its burden, beyond a reasonable doubt, to show sexual contact occurred.

We hold that Micheau fails to establish that any of these statements exceeded a prosecutor's "wide latitude" in making arguments in closing and, thus, his claims of prosecutorial misconduct at closing fail.

### III. CUMULATIVE ERROR

Micheau argues that, even if the errors above were insignificant on their own to establish prejudice, together the cumulative effect of the errors deprived Micheau of a fair trial. We disagree.

We apply the cumulative error doctrine when a combination of trial errors denies the accused of a fair trial, "'even where any one of the errors, taken individually, would be harmless.'" *State v. Azevedo*, 31 Wn. App. 2d 70, 85, 547 P.3d 287 (2024) (quoting *In re Pers. Restraint of Cross*, 180 Wash.2d 664, 690, 327 P.3d 660 (2014)). Reversal is required if, under the totality of the circumstances, a defendant shows that the accumulation of errors substantially

prejudiced them and denied them a fair trial. *Id*. However, where the errors are few and have little or no effect on the outcome of the trial, the doctrine does not apply. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).

Here, any errors did not substantially prejudice Micheau and did not deny Micheau a fair trial. Nonprejudicial evidentiary error did occur one time when the trial court admitted the first instance where Climer discussed LG's disclosure. And, even if we assumed Micheau's counsel performed deficiently in failing to object to Climer and Bleuel's statements and the prosecutor's actions regarding those same statements amounted to misconduct, all possible errors relate to the same evidence and, as we discussed above, such evidence had little effect, if any, on the outcome of Micheau's trial. Therefore, we hold the Micheau's cumulative error claim fails and the doctrine does not apply. *See id*.

## IV. COSTS OF COMMUNITY CUSTODY SUPERVISION

Micheau argues that, due to a change in the statute governing community custody supervision fees, the trial court erred in imposing a condition to pay such fees. The State agrees that the fees should be stricken. We agree.

Micheau brings a direct appeal following the trial court's imposition of "supervision fees as determined by the [DOC]" as a part of Micheau's judgment and sentence. CP at 186, 194, 209. The trial court used to have the authority to impose such fees under former RCW 9.94A.703(2)(d) (2018). However, effective July 1, 2022, community custody supervision fees are no longer authorized for any defendant as per a legislative amendment. *State v. Bogdanov*, 27 Wn. App. 2d 603, 630, 532 P.3d 1035, *review denied*, 2 Wn.3d 1008 (2023); *State v.*

*Wemhoff*, 24 Wn. App. 2d 198, 199, 519 P.3d 297 (2022). And the amendment applies prospectively to cases on direct appeal such as here. *See Bogdanov*, 27 Wn. App. 2d at 630.

Because the amendment applies to Micheau's case, we agree and remand for the trial court to strike the community custody provision imposing the supervision fees.

## V. MENTAL HEALTH EVALUATION

Micheau argues that trial court did not have the authority to require mental health evaluation and treatment in Micheau's judgment and sentence because the trial court neither found that there were reasonable grounds to believe Micheau was mentally ill nor found that any mental illness "most likely influenced the offense." Br. of Appellant 61, 63. We agree.

We review crime-related community custody conditions for an abuse of discretion. *State v. Brooks*, 142 Wn. App. 842, 850, 176 P.3d 549. An abuse of discretion occurs when the trial court bases its decision on untenable grounds "including those that are contrary to law." *Id.* at 850.

Under the Sentencing Reform Act of 1981, a trial court may order a defendant whose sentence included community placement or supervision to obtain a mental health evaluation and participate in treatment so long as the trial court complies with certain procedures. *Id.* at 851; *see also State v. Jones*, 118 Wn. App. 199, 209, 76 P.3d 258 (2003). The trial court must find (1) "that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025" and (2) that the mental health "condition [was] likely to have influenced the offense."[10] RCW 9.94B.080; *Brooks*, 142 Wn. App. at 851.

---

[10] RCW 71.24.025 defines "[m]entally ill persons" as people who either have an "[a]cutely mentally ill" condition, have a "[c]hronically mentally ill" condition, are "[s]eriously disturbed," or are a child and are "severely emotionally disturbed." (3), (13), (42), (51), (52).

Here, the trial court ordered Micheau to obtain a mental health evaluation and treatment but made no finding that Micheau was mentally ill with a condition that influenced his offenses. CP at 195. Because this finding was required in order for the trial court to require a mental health evaluation and treatment, the trial court exceeded its authority and abused its discretion in imposing the condition without meeting the statutory requirements. *See Brooks*, 142 Wn. App. at 851.

The State agrees with Micheau that, if the court's intention was to order the condition, remand is warranted for the trial court to make the requisite findings. However, the State instead contends that including such condition was a clerical error in which the trial court inadvertently failed to strike the condition from Appendix H.

 "A clerical mistake is one that, when amended, would correctly convey the intention of the court based on other evidence." *State v. Davis,* 160 Wn. App. 471, 478, 248 P.3d 121 (2011).

Here, it is not clear from the record that the trial court did not intent to order Micheau to undergo a mental health evaluation. The recommendation that Micheau obtain both a psychosexual and mental health evaluations and treatments were listed in the PSI, which the trial court stated it read in its oral ruling. While the trial court did not mention the mental health evaluation condition in its oral ruling, the court stated it did not make any changes to the proposed judgment and sentence, except removing a duplicate entry for the 67 months of confinement, and specifically signed Appendix H. With this uncertainty regarding the trial court's intentions, it is not clear that the condition was merely inadvertently added and a clerical mistake. *See Davis*, 160 Wn. App. at 478.

No. 58463-8-II

Because it is unclear whether the court intended to order the condition and yet the order did not comply with the statutory requirements, we remand for the trial court to strike the mental health evaluation and treatment condition unless it determines that it can presently and lawfully comply with RCW 9.94B.080's requirements. *See Jones*, 118 Wn. App. at 211.

CONCLUSION

We affirm Micheau's convictions but remand for the trial court to (1) strike the costs of community supervision and (2) consider whether to order a mental health evaluation and treatment according to the statutory requirements.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, J.

Veljacic, A.C.J.

31